**In the Matter of John Weldon BROWN, Debtor.**

**Charma Lee BROWN, Plaintiff,**

v.

**John Weldon BROWN, Defendant.**

Bankruptcy No. 3–80–03545.

Adv. No. 3–81–0029.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 19, 1985.

Thomas A. White, III, Dayton, Ohio, for debtor.

Lawrence T. Burick, Dayton, Ohio, for plaintiff.

Thomas R. Noland, Trustee, Dayton, Ohio.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter came on for trial on 7 November 1984 upon the complaint of Charma Lee Brown (hereinafter Charma) filed 23 January 1981 and the Answer of Defendant, John Weldon Brown (hereinafter John) filed 16 March 1981. A pretrial set for 5 March 1981 and subsequent pretrials were continued by request of counsel and the matter was dismissed for want of prosecution on 19 August 1981. Upon motion, an order of reinstatement was entered on 27 August 1981 and a trial notice issued 4 December 1981 for 11 January 1982. Upon motion of counsel the trial was again cancelled and continued indefinitely until the Trustee in Bankruptcy abandoned certain parcels of real estate and various foreclosure suits in the state court were finalized. A pretrial order was finally entered on 20 August 1984 after subsequent requested continuances, but the trial scheduled for 27 September 1984 was again continued by request of the attorney for Charma until 7 November 1984.

The matter was finally submitted on the evidence adduced, partial stipulations filed at bar on 7 November 1984, the Trial Memorandum filed in behalf of Charma on 7 November 1984, Reply Memorandum in behalf of John filed on 16 November 1984, and Plaintiff's Supplemental Trial Memorandum filed on 23 November 1984.

The Post-trial briefs pose primarily well reasoned analyses of case precedents and authorities not materially in conflict, including prior opinions issued by this Court. Hence, the decision of this court essentially depends upon factual findings and conclu-

sions therefrom, with reference particularly to the opinions *In Re Calhoun*, 715 F.2d 1103 (C.C.A. 6th 1983); *Gerdes v. Gerdes*, 33 B.R. 860 (Bkrtcy.Ohio 1983); *In Re Jacobs*, 83–0720 (at Dayton, 1984, unreported); *Lincoln v. Phillips*, 31 B.R. 398 (Bkrtcy.Ohio 1983); *Van Hoose v. Van Hoose*, 31 B.R. 332 (Bkrtcy.Ohio 1983); *Castle v. Parrish*, 29 B.R. 869 (Bkrtcy.Ohio 1983); *In Re Fournier*, 82–0402 (at Dayton, 1982, unreported); *In Re Penwell*, 81–0169 (at Dayton, 1981, unreported); *Stamper v. Stamper*, 17 B.R. 216, BLR 69180 (Bkrtcy.Ohio 1982); *Matter of Sturgell*, 7 B.R. 59, BLR ¶ 67,701 (Bkrtcy.Ohio 1980); *Tope v. Tope*, 7 B.R. 422 (Bkrtcy. Ohio 1980).

Charma and John were married on 12 August 1950, and two children were born as issue of the marriage. They were divorced on 30 October 1979, at which time Charma was 57 years of age and unemployed. A Separation Agreement was attached to and made a part of the Final Judgment and Decree of Divorce.

Paragraph 8 of the Separation Agreement provides, as follows:

Except as expressly provided for herein, and as and for permanent alimony, the Husband shall pay as they fall due, and save the Wife harmless thereon, all debts and obligations of the parties in existence on or before February 2, 1978, including, but not limited to, those debts and obligations listed on Exhibit A attached hereto and made a part hereof for all purposes. Each party shall be solely responsible and liable for any debts or obligations contracted by such party after February 2, 1978. In the event a Final Judgment and Decree of Divorce is granted between these parties, the Wife shall be awarded lump-sum alimony against the Husband in an amount equal to the debts and obligations for which he is solely liable, which alimony obligation the Husband shall have the privilege and option of discharging and satisfying by paying when due said debts and obligations, and by indemnifying and saving the Wife harmless thereon.

Paragraph 10 of the Separation Agreement provides, as follows:

The Husband shall pay to the Wife permanent alimony in the amount of One Hundred Dollars ($100.00) per week for a period of six months, commencing on Friday, August 31, 1979, and payable on each Friday thereafter. Commencing February 29, 1980, said weekly alimony payments shall automatically increase to One Hundred Fifty Dollars ($150.00) per week payable on Friday of each calendar week. The Husband's alimony obligation under this paragraph is subject to further order of a court of competent jurisdiction, and shall cease at such time as the Wife remarries, dies, or upon the death of the Husband, whichever event first occurs.

The divorce court awarded Charma a "lump sum" judgment against John on 22 September 1980 in the amount of $4022.40 (as of 19 September 1980) for accrued, unpaid monthly payments. The delinquency in periodic payments was in the amount of $4784.20 on 7 November 1980, the date of the bankruptcy petition.

Charma conveyed her interest in all of the properties referred to in Paragraph 10 at the time of the divorce. John sold all of them prior to bankruptcy to purchasers who assumed the outstanding mortgages, but he and Charma were never released from the obligations, for which both parties remained potentially liable upon defaults. The property located at 1104 Eureka is now in foreclosure. The amount of the judgment sought against Charma is $15,029.44, plus interest at 9.75% per annum from July 31, 1984. This property has been vacant for some time and probably will not sell for an amount sufficient to satisfy the balance due.

The total joint debts of the parties was about $548,000.00 at the time of the divorce. Sales of various parcels of real estate have reduced the potential remaining liability to that mentioned above, of which the 1104 Eureka foreclosure is the most imminent.

Charma is presently employed, earning about $160.00 per week, augmented by $88.00 per month as assignee of a mortgagee, and remains unremarried. State court action for collection of the divorce decree has been delayed pending resolution of the liability in the bankruptcy context. The exact status of the litigation in the state court is not established by the evidence adduced herein. John testified that the state court had "suspended" the obligations. This testimony was not rebutted by the evidence submitted by Charma, although such suspension is not documented by the evidence adduced.

The evidence is clear that neither party enjoys current affluence or luxury. John's real estate business has long since become defunct and his testimony indicates he earns about $12,000.00 per year as an associate of another real estate firm. By the same token, as Charma testified, she does not have sufficient income even to maintain minimal housing, transportation and necessary medical needs.

### CONCLUSIONS OF FACT AND LAW

Both parties by their evidence and arguments presented have invoked the sympathy of this Court for existing personal and economic conditions approaching the hopeless. Charma seeks to preserve intact regular payments necessary for a meager subsistence as decreed by the state court. John argues that his changed economic conditions demand reconsideration of the state court decree, and, further, urges this Court to find the proverbial distinction between "maintenance and support" as opposed and distinguished from a "division of property."

The change in circumstances, as established by the evidence, nevertheless, cannot and does not influence this Court's conclusion; but, rather, the circumstances of the parties as existing on the date of the state court decree is controlling as it pertains to dischargeability under § 523(a)(5) of the Bankruptcy Code and the precedents cited above. The provisions of ¶¶ 8 and 10 of the Separation Agreement and the state court decree must all be read *in pari materia*. There can be no doubt under the comparative economic circumstances then existing that the allotments to Charma were "in the nature of alimony, maintenance, or support" and thus nondischargeable.

With regard to the changed circumstances as demonstrated by the facts in behalf of John, it is noted that the decision by the United States Court of Appeals for the Sixth Circuit *In Re Calhoun* and the subsequent decisions by this Court were made prior to the jurisdictional limitations enacted by the Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333. Under the decree and the law of the State of Ohio, the state domestic relations court has retained jurisdiction over modification of its decree entered on October 30, 1979. See Ohio Rules of Civ.Pro. Rule 75(I); 48 *O.Jur.3d*, Family Law §§ 1176–1183 at pp. 358–370. As amended by this 1984 Act, 28 U.S.C. § 1334(c)(2) (even though prospective in operation) very clearly expresses the intention to remove related State law causes of action from the federal courts if such "claim or cause of action could not be heard in a court of the United States but for bankruptcy jurisdiction ..." Abstention is mandated "if the proceeding is commenced and can be timely adjudicated in an appropriate State forum."

This Court concludes that the question of the modification of a state court decree as to alimony and support should no longer be litigated in the bankruptcy courts. Hence, a judgment should be entered herein finding nondischargeable the lump sum alimony judgment owed by John and that the weekly alimony payments are nondischargeable so long as not terminated by the express terms of the Final Judgment and Decree of Divorce, or until modified by the state court conformably to Ohio law.

Abstention is dictated.