In re Gerard DELAINE, Debtor.

Dorothy DELAINE, Plaintiff,

v.

Gerard DELAINE, Defendant.

In re Larry L. THOMPSON, Debtor.

Clara M. Thompson
MULDREW, Plaintiff,

v.

Larry L. THOMPSON, Defendant.

Bankruptcy Nos. 85–2602, 85–03214.
Adv. Nos. 85–038, 85–0494.

United States Bankruptcy Court,
N.D. Alabama,
Western and Southern Divisions.

Dec. 20, 1985.

Harry Asman, Birmingham, Ala., for debtor Larry L. Thompson.

James G. Henderson, Birmingham, Ala., Interim Trustee for Larry L. Thompson.

James A. Holliman, Birmingham, Ala., for Clara M. Thompson Muldrew.

David Reid, Livingston, Ala., for debtor Gerard Delaine.

C. Michael Stilson, Tuscaloosa, Ala., Interim Trustee for Gerard Delaine.

Booker T. Forte, Jr., Eutaw, Ala., for Dorothy Delaine.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Bankruptcy Judge.

The above styled adversary proceedings have been consolidated for the purposes of this opinion because they involve common questions of law regarding the dischargeability of marital obligations pursuant to 11 U.S.C. Section 523(a)(5) (1984). ' After a TRIAL on the merits of each case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

I. Delaine Case

Gerard and Dorothy Delaine were married on June 19, 1970 in Livingston, Sumter County, Alabama. Two children were born of the marriage—Gerard D. Delaine and Rasjus Delaine who were born July 19, 1971 and September 30, 1972, respectively. Gerard Delaine primarily worked in trucking but also worked as a pulpwooder from time to time. Mr. Delaine's combined income from trucking, pulpwooding and unemployment benefits in 1983 and 1984 was approximately $19,000.00 annually. During the marriage, Dorothy Delaine held several jobs for short periods of time but relied upon Gerard Delaine to support her and her two children.

Mr. Delaine filed for divorce in the Circuit Court of Sumter County, Alabama on September 5, 1984. The FINAL JUDGMENT OF DIVORCE contained the following pertinent provisions:

FOURTH: The custody of the minor children, Gerard Delaine and Rasjus Delaine, is awarded to the mother, subject to the right of reasonable visitation by the father. The father is ordered to pay $150.00 per month child support; the payment to be made to the Circuit Clerk on or before the 15th day of each month.

. . . .

SIXTH: Possession of the marital home is awarded to the wife, and husband is

ordered to make all mortgage payments due on the home. Wife shall have the right to live there as long as she remains unmarried. When the youngest child attains the age of nineteen years, or the wife remarries, the house is ordered to be sold and the proceeds evenly divided after payment of all debts. Title to the property shall remain in both parties. SEVENTH: Husband is awarded title to the other real property, and the wife is ordered to execute a deed to husband conveying her title to the real estate. Husband shall be responsible for payment of all liens.[1]

On January 8, 1985 the Circuit Court of Sumter County, Alabama entered an order directing Mr. Delaine's employer, Roadway Express, Inc. to withhold $150.00 per month from the debtor's paychecks to satisfy his current support obligation. The deductions were, in fact, made; but due to certain administrative charges, Mrs. Delaine received only $138.40 per month pursuant to the order.

Mr. Delaine fell behind on the monthly mortgage payments of $440.00 and $316.00 per month to AmSouth Mortgage Co. and Credithrift of America, Inc. respectively. On or about April 20, 1985, Mrs. Delaine filed a PETITION FOR DEFENDANT TO SHOW CAUSE WHY HE SHOULD NOT BE HELD IN CONTEMPT for, among other things, failing to make the current payments on the mortgages and on the child support obligation. Mr. Delaine filed his Chapter 7 petition in this Court on April 25, 1985.

On July 2, 1985, the Honorable Claude D. Nielson, Circuit Judge for the Circuit Court of Sumter County, Alabama ruled that Mr. Delaine owed Mrs. Delaine the sum of $33.00 for child support. This arrearage was apparently caused by the administrative charges mentioned above. Judge Nielson ruled that Mr. Delaine was not in contempt of court. In his ORDER, Judge Nielson further stated:

The Court is of the opinion that the plaintiff should file a Petition to Modify the amount of child support based on the change of circumstances in this cause; however, she has elected not to do so at this time.

In lieu of foreclosure, Mr. and Mrs. Delaine executed a deed to the homeplace in August, 1985 to John and Bessie Larkin. Mrs. Delaine was released from the mortgage indebtedness at that time.

II.  Thompson Case [2]

Plaintiff, Clara M. Thompson Muldrew [3], and defendant, Larry L. Thompson, had been married for twenty-two years when they were divorced on December 13, 1982. The couple had one child, Paula Thompson, who was a minor at the time of the divorce. The former Clara Thompson has since remarried to Mr. Hugh B. Muldrew.

Mr. Thompson was the owner of Thompson Transport and Refrigeration, Inc. which had been in the business of selling and repairing refrigeration units for transfer trucks. After an initial period of success, Mr. Thompson decided to relocate and to expand the business. The company borrowed the necessary capital from the National Bank of Commerce (hereinafter called "N.B.C.") which required the personal guarantees of Mr. and Mrs. Thompson and took mortgages and security interests on all of the couple's assets which included a 1981 Buick, the marital home, and a lake house on Lake Mitchell.

Mrs. Thompson had been employed by Thompson Transport & Refrigeration, Inc. as its Secretary Treasurer. Prior to the

1. AmSouth Mortgage Co. held a first mortgage on the debtor's marital home which consisted of a house and one acre of land. Credithrift of America, Inc. held a second mortgage on the homeplace and a first mortgage on twenty-four acres of land which is the "other real property" referred to in paragraph SEVENTH of the divorce decree.

2. After submission, the Court has been advised that Mr. Thompson is now deceased. This fact does not moot this proceeding as determination of the dischargeability issue will be relevant on any claim by Mrs. Thompson against the probate estate of Mr. Thompson.

3. The former Clara Thompson has since remarried to Mr. Hugh B. Muldrew.

divorce, however, Mrs. Thompson quit her job and moved to the couple's house on Lake Mitchell. She drew unemployment compensation for a short time, and later worked at a grocery store for minimum wage.

Mrs. Thompson filed for divorce in the Circuit Court of Jefferson County, Alabama, Bessemer Division (DR–82–411). The DECREE OF DIVORCE was entered in that case on December 13, 1982. Paragraph 4 of the decree awarded custody of Paula Thompson to her mother. Mr. Thompson was directed in paragraphs 5 and 6 respectively to pay Mrs. Thompson $100.00 per month "as periodic alimony for support and maintenance" and $300.00 per month for child support. Paragraphs 7, 8 and 9 provided:

7. That the Defendant is divested of all of his right, title and interest in and to the lake property in Chilton County, Alabama and the Defendant shall execute all necessary documents to transfer his interest therein to the Plaintiff. That the parties shall cooperate in the transfer of the existing lease on said property to the Plaintiff and the Defendant shall further cooperate in the transfer of all utilities and deposits on said property to the Plaintiff and the Plaintiff shall be responsible for the lease and utility payments thereto and shall indemnify and hold Defendant harmless in the event of her nonpayment of same. That all lease and utility payments are current as of the date of the execution of this decree.

That the Defendant shall indemnify and hold harmless the plaintiff on the outstanding indebtedness owed to National Bank of Commerce on said lake property and shall indemnify and hold harmless the Plaintiff from any claim, action, cause of action or other liabilities or damages in the event of his nonpayment of same and all reasonable efforts will be made by the Defendant to release said lake property from all existing security agreements. That the plaintiff shall execute any and all documents necessary to transfer all of her rights, title and interest to the Defendant in and to

any other real property acquired by the parties during the marriage. That the defendant shall make no efforts to secure the release of any such property from any security agreement without first having secured the release of the lake property.

8. As further alimony, the Plaintiff is hereby awarded the 1981 Buick automobile, serial number 1J4AM47N7BG156298 and the Defendant shall pay and be liable for any outstanding indebtedness owing thereon, and shall indemnify and hold harmless the Plaintiff from any claim, action, cause of action or other liabilities or damages in the event of his nonpayment of same. The Defendant shall execute all reasonable and necessary documents to effectively transfer title and ownership of this automobile to the Plaintiff.

9. As alimony, the Defendant shall pay any and all outstanding joint indebtedness incurred by the parties prior to their separation and shall indemnify and hold harmless the Plaintiff from any action, claim, cause of action or other damages or liabilities arising out of the non payment of same.

Lastly, Mr. Thompson was ordered to pay the wife's attorney's fees of $500.00 in paragraph 12.

Mr. Thompson began to experience severe financial problems apparently due to the downturn in business after the move and expansion, and he was unable to make the payments required of him under the original divorce decree. N.B.C. foreclosed on the debtor's home, on the lake house, and on the 1981 Buick automobile.

On October 13, 1983, the Circuit Court for Jefferson County, Alabama, Bessemer Division entered an ORDER modifying the original decree. The court ordered that the periodic alimony provided for by paragraph 5 of the original decree be terminated. The court refused, however, to modify Mr. Thompson's obligations under paragraphs 7 and 8 since those obligations were "in the nature of a property settlement and alimo-

ny in gross." [4] Mr. Thompson, therefore, continued to be obligated to hold his ex-wife harmless on the deficiency owed to the bank on the lake house and on the 1981 Buick pursuant to paragraphs 7 and 8 respectively.

Mrs. Muldrew's testimony established that $4,400 was owed on the 1981 Buick after the divorce, but she could not assign a fair market value to the automobile at the time of the divorce. Mrs. Muldrew also testified that N.B.C. initially sought to hold her liable for a deficiency of approximately $80,000.00 but that this figure was reduced by a payments of $26,000.00 in fire insurance benefits upon the destruction of the lake house by fire. Plaintiffs complaint establishes that $55,670.00 is still owed on this deficiency.

At TRIAL, Mrs. Muldrew testified that she needed both the lake house and the automobile for her maintenance and support. She also testified, however, that she understood Mr. Thompson's obligation to hold her harmless on the lake house and automobile debt to be part of the parties' property settlement.

## CONCLUSIONS OF LAW

The dischargeability of alimony, maintenance or support obligations is governed by Section 523(a)(5) of the Bankruptcy Code which provides:

> Section 523 Exceptions to discharge.
> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—
> (A) such debt is assigned to another entity, voluntarily, by operation, or otherwise (other than debts assigned pursuant

to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. Section 523(a)(5) (1984).

▪ Exceptions to discharge should be narrowly construed against the creditor and in favor of the bankrupt. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Matter of Cross,* 666 F.2d 873, 879–80 (5th Cir.1982) (Unit B). The burden of proof lies with the creditor to demonstrate that the particular debt falls within one of the statutory exceptions. *Cross,* 666 F.2d at 880. Further, as Judge Joe Lee has stated:

> In deciding whether a particular debt of the bankrupt qualifies as alimony, maintenance or support so as to be nondischargeable in bankruptcy the bankruptcy court is confronted with two conflicting policy considerations, that of requiring the bankrupt to fulfill obligations to his ex-wife arising out of the broken marriage contract and that of giving the bankrupt a fresh start unencumbered by the burdens of preexisting debt arising from other contracts. Obviously, neither of these competing policy considerations should override the other.

Lee, *Case Comment,* 50 Am.Bankr.L.J. 175, 176 (1976). A bankruptcy court, therefore, should not deny the debtor his fresh start simply because his former wife has chosen not to seek the same relief on her own behalf. *In re Daiker,* 5 B.R. 348, 352 (Bkrtcy.D.Minn.1980).

On March 4, 1985, the Eleventh Circuit Court of Appeals issued its opinion in the case of *In re Harrell,* 754 F.2d 902 (11th Cir.1985) which is now controlling authority

---

**4.** In a subsequent ORDER dated December 29, 1983, the court ruled that Mr. Thompson was obligated to pay Mrs. Muldrew an additional

$300.00 for attorney's fees. That Order relieved Mr. Thompson of his obligation to maintain health insurance coverage on Paula Thompson.

in this circuit in dischargeability proceedings under Section 523(a)(5) of the Code.[5] The *Harrell* court stated:

> The language used by Congress in Section 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is "actually in the nature of alimony, maintenance, or support." The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.
>
> The legislative history is to the same effect. It described the process of determining whether an obligation was in the nature of support as being similar to the determination of whether a payment is actually alimony or in reality a property settlement.
>
> The House Report that accompanied the Bankruptcy Code reads, in relevant part:
>
> > This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.
>
> H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S. Code Cong. & Admin. News 1978, p. 6319.
>
> Considerations of comity reinforce our interpretation. Debtor's attempt to expand the dischargeability issue into an assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts.
>
> We conclude that Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the nature of support. This inquiry will usually take the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement. Thus, there will be no necessity for a precise investigation of the spouse's circumstances to determine the appropriate level of need or support. It will not be relevant that the circumstances of the parties may have changed, e.g., the spouse's need may have been reduced at the time the Chapter VII petition is filed. Thus, limited to its proper role, bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.

Once the bankruptcy court in this case concluded that the alimony payments

---

**5.** A leading opinion on the dischargeability of debts arising out of a divorce is that of the Sixth Circuit Court of Appeals in *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). In a recent case, the Honorable Merritt S. Deitz, Jr., United States Bankruptcy Judge, Western District of Kentucky set out the following four-part test for determining the dischargeability of debts arising out of a divorce under the *Calhoun* doctrine:

> Under this progressive formula we are directed to consider whether:
> (a) The intent of the state court or the parties was to create a support obligation.
> (b) whether the support provision has the actual effect of providing necessary support;
> (c) the amount of support is so excessive as to be unreasonable under traditional concepts of support, and finally,
> (d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Helm,* 48 B.R. 215, 221 (Bkrtcy.W.D.Ky. 1985). This Court has followed the *Calhoun* doctrine in dischargeability proceedings under Section 523(a)(5) of the Code in the past, but the *Harrell* court has rejected the Calhoun analysis.

were "actually in the nature of alimony", its task was at an end. The obligation was thereby determined to be nondischargeable under Section 523(a)(5). The district court correctly rejected the bankruptcy court's subsequent excursion to determine the precise level of the wife's need for support.

*Harrell,* 754 F.2d 906–07.

Under the *Harrell* approach, the bankruptcy court is no longer required to retry the divorce case; if a spouse wants to modify the award of the divorce court, he or she should attempt to do so in state court. *See id.* at n. 8 and accompanying text; *In re Brown,* 46 B.R. 612, 12 B.C.D. 869 (Bkrtcy.S.D.Ohio, 1985). While the *Harrell* approach is much simpler than the four-step approach of *Calhoun,* deciding whether a particular obligation is "actually in the nature of alimony, maintenance or support" as opposed to a property settlement is often a difficult task in itself (in spite of the simple inquiry language of *Harrell*) which must be made on a case by case basis.[6]

### A. FEDERAL LAW

■ Whether a particular debt is a support obligation or part of a property settlement for dischargeability purposes is a question of federal bankruptcy law, not state law. *In re Harrell,* 754 F.2d 902, 905 (11th Cir.1985); *In re Williams,* 703 F.2d 1055, 1056 (8th Cir.1983). State law, however, can and should be used to provide at least a basic guide for developing the federal standard. *In re Hughes,* 16 B.R. 90, 92 (Bkrtcy.N.D.Ala.1981). Reference to state law is also necessary because there is no federal common law of domestic relations, *Id.* (citing *In re Bishop,* 13 B.R. 304 (Bkrtcy.E.D.N.Y.1981)), and because attorneys generally draft divorce agreements to express the parties' intent in terms of state divorce law. *Id.* (citing *Melichar v. Ost,* 7 B.R. 951, n. 8 (D.Md.1980)).

### B. ALABAMA LAW

1. The Award.

The allowance of alimony upon the granting of a divorce is provided for by statute in Alabama. *See* Ala.Code Section 30–2–51 (1983). Permanent alimony may be granted to the spouse in either a periodic or in a lump-sum fashion.[7] *See generally* Inge, *Alabama Domestic Relations Law,* 22 Ala. L.Rev. 427, 444 (1970); Cook, *Family Law: Surveying 15 Years of Change in Alabama,* 36 Ala.L.Rev. 419, 453 (1985); McCurley & Davis, *Alabama Divorce, Alimony and Child Custody* Section 11–5 (1982). The purpose of awarding periodic alimony is to provide for the current and continuous support of the spouse while alimony in gross is a lump sum which represents the present value of the spouse's marital rights which are being terminated by the divorce. *See Dees v. Dees,* 390 So.2d 1060, 1064 (Ala.Civ.App.1980). The term "alimony in gross" is synonymous with a property settlement. *See generally* Inge, *supra* at 444 n. 151; Note, *Prohibition Against Subsequent Modification of Alimony In Gross,* 16 Ala.L.Rev. 144, 145 (1963). For an award to constitute alimony in gross, it must be certain with respect to both amount and time of payment; and the right to it must be vested and not subject to modification. *LeMaistre v. Baker,* 268 Ala. 295, 298, 105 So.2d 867, 869 (1958).

### 2. DISTINCTION: PERIODIC (MODIFIABLE) AND PROPERTY STATEMENT OR ALIMONY IN GROSS (NON-MODIFIABLE).

The distinction between periodic alimony and alimony in gross is most significant in the state law context where one party seeks a modification of the alimony award due to a material change in circumstances. Fortunately, Alabama has developed a

---

6. Several courts have enumerated factors to aid the bankruptcy court in this determination; Judge Mannes' opinion in *In re Coffman,* 52 B.R. 667, 674–75 (Bkrtcy.D.Md.1985) (18 factors) is an excellent example.

7. This "lump sum" may be paid in installments if the total amount owed is fixed. *See Blalock v. Blalock,* 51 Ala.App. 686, 288 So.2d 747 (1974).

large body of case law interpreting the distinction between PERIODIC ALIMONY AND PROPERTY SETTLEMENT OR ALIMONY IN GROSS. See 7A Ala.Digest, Divorce Key No. 245(1). *See generally* Cook, *supra* at 453; Inge, *supra* at 444; McCurley, *supra* at Section 16–5. An award of periodic alimony based on the spouse's future earning capacity is modifiable whether or not the court reserves control in its decree. *Hager v. Hager,* 293 Ala. 47, 54, 299 So.2d 743, 749 (1974); *Epps v. Epps,* 218 Ala. 667, 120 So. 150 (1929). An award of alimony in gross, however, is vested and is not subject to modification since after a lapse of thirty days from the rendition of the decree, a court of equity cannot modify a property settlement provision except to correct clerical errors. *See Hager v. Hager,* 293 Ala. 47, 54, 299 So.2d 743, 749 (1974); *McEntire v. McEntire,* 345 So.2d 316, 319 (Ala.Civ.App.1977). In *Du-Boise v. DuBoise,* 275 Ala. 220, 153 So.2d 778 (1963), the Alabama Supreme Court ruled that the divorce court could not retain jurisdiction to modify a property settlement. The *DuBoise* court noted the distinction between periodic alimony and a property settlement or alimony in gross stating:

> As reasoned in *Epps v. Epps,* supra, the power of the court to modify a provision for periodic support payments is derived from the continuous nature of such a provision. A property settlement is not continuous; it is a one time thing. We incline to the view that the rule permitting a court to modify a provision for period support payments does not apply to a provision for division of property . . . .

Id. at 228, 153 So.2d at 785.

■ The Court re-iterates at this point that in making a determination of dischargeability under Section 523(a)(5) of the Bankruptcy Code it is applying federal law, not state law. *In re Harrell,* 754 F.2d 902, 905 (11th Cir.1985). The Court would, therefore, not be bound to hold the indebtedness dischargeable if the obligation was determined not to be subject to modification since the bankruptcy courts are not

bound by particular state law rules in making the dischargeability determination under Section 523(a)(5) of the Bankruptcy Code. *Id.* at 904; *see e.g. In re Hughes,* 16 B.R. 90 (Bkrtcy.N.D.Ala.1981) (nonmodifiable award held non-dischargeable).

## APPLICATION OF LAW TO FACTS

### I. *Delaine Case.*

The issues before the Court are (1) whether the obligation to pay the mortgage indebtedness imposed upon Mr. Delaine by paragraph SIXTH of the divorce decree is in the nature of alimony, maintenance or support in order to be excepted from discharge pursuant to 11 U.S.C. Section 523(a)(5) (1984) and (2) if the indebtedness is excepted from discharge, what amount is nondischargeable. The debtor contends that the paragraph SIXTH is part of a property settlement since the debtor is awarded the twenty-four acres in paragraph SEVENTH. The debtor also argues that because the amount of these payments is unreasonable when added to the $150.00 per month for child support and compared to the debtor's monthly income, the state court clearly could not have intended the mortgage payments to have been in the nature of alimony, maintenance, or support. Mrs. Delaine, on the other hand, contends that because she and her children at all times during the marriage relied upon the debtor to provide the family's food, clothing, and shelter, paragraph SIXTH creates a maintenance or support obligation for the debtor to continue to provide a home for Mrs. Delaine and the two children.

■ The Court determines that paragraph SIXTH creates an obligation that is "in the nature of alimony, maintenance, or support" which is excepted from discharge pursuant to 11 U.S.C. Section 523(a)(5) (1984). *See In re Harrell,* 754 F.2d 902 (11th Cir.1985). The Court concludes that this provision was in the divorce decree to evidence the intention of the parties and the divorce court that Mr. Delaine continue to provide a home for Mrs. Delaine and

their two children as he had done throughout the marriage.[8] If not in the nature of alimony, these payments are clearly in the nature of maintenance or support. *In re Wright*, 51 B.R. 630 (Bkrtcy.S.D.Ohio, 1985); *In re Miller*, 34 B.R. 289 (Bkrtcy.E.D.Pa.1983); *See In re Maitlen*, 658 F.2d 466 (7th Cir.1981); *In re Brown*, 36 B.R. 103 (Bkrtcy.D.Kans.1983); *In re Allshouse*, 34 B.R. 512 (Bkrtcy.N.D.Pa.1983). As was stated in *In re Cribb*, 34 B.R. 862 (Bkrtcy.D.S.C.1983):

> The purpose of the debtor's assumption of the second mortgage debt was to maintain and support the former spouse and child in the family home. The obligation to maintain and support the family includes the obligation to keep a roof over their heads. This is what the debtor undertook when he agreed to assume the second mortgage on the home in which his former spouse and his child were to live.

*Id.* at 865. Further, the facts that paragraph SEVENTH is clearly a property division and that paragraph SIXTH keeps title to the marital home in both parties support the Court's conclusion that the mortgage payments were not intended to be a property settlement.

The Court also determines that the mortgage payments awarded in paragraph SIXTH would be characterized by a divorce court as periodic alimony which could be modified as opposed to alimony in gross which could not be modified. In *McGugin v. McGugin*, 357 So.2d 347 (Ala.Civ.App. 1978) the court ruled that the husband's obligation to make the mortgage payments on the home was not alimony in gross or a property settlement. The decree in *McGugin* which is virtually identical to that in the instant case directed the husband to make the mortgage payments, but:

> in the event the Complainant [wife] shall remarry, then the home place shall be sold, and after the costs incident to the sale and the mortgage balance thereon have been paid, the net balance shall be divided equally between the parties.

*McGugin*, 357 So.2d at 348. The *McGugin* court ruled that the obligation to make the mortgage payments was a type of modifiable periodic alimony. The court based its determination on the fact that the amount of the obligation was not "fixed" since the husband was only obligated to pay off the balance of the mortgage if his wife did not remarry before the debt had been liquidated. *Id.* at 351–52; *see generally* McCurley *supra* at Section 12–2.

Likewise, in the instant case, the extent of Mr. Delaine's indebtedness was not certain when the divorce decree was entered since Mr. Delaine was only ordered to make the *"mortgage payments due on the home."* When the youngest child reached nineteen years of age or if Mrs. Delaine remarried the house was to be sold, and the parties, who both remained owners of the marital home, would divide the proceeds "after the payments of all debts." It is clear, therefore, that Mr. Delaine's obligation was never fixed in amount and was, therefore, a form of periodic alimony. *See id.* This conclusion is buttressed by the

---

**8.** The Court rejects the debtor's contention that the parties could not have intended the mortgage payments to be periodic alimony because the amount is unreasonable when added to the $150.00 per month for child support and compared to the debtor's income since Mr. Delaine made those mortgage payments prior to the divorce.

The Court also rejects the debtor's contention that the obligation to make the mortgage payments must be dischargeable since the payments are made to a third party and not to the wife. A debt payable to a third person may be viewed as nondischargeable support obligations if intended to serve as such. *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983); *In re Wright*, 51

B.R. 630 (Bkrtcy.S.D.Ohio 1985) *Matter of Chambers*, 36 B.R. 42, 45 (Bkrtcy.W.D.Wis.1984) (citing *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983)). As was stated in *In re Cribb*, 34 B.R. 862 (Bkrtcy.D.S.C.1983):

> The fact that the debtor will, in all probability, pay the bank directly, rather than through his former wife, has no material bearing on the nondischargeability of the debt. Divorce decrees often provide for debt assumption in lieu of, or as part of, alimony, support, or maintenance. It is frequently inconvenient or impractical to require the debt to be paid through the spouse rather than directly to the creditor.

*Id.* at 865.

fact that Judge Neilson in his order suggested that Mrs. Delaine should file a Petition to Modify the amount of the child support. If modifiable, it is Alabama periodic support. If periodic support then it is "in the nature of alimony, maintenance or support"—so it is NON–DISCHARGEABLE.

■ Having determined that paragraph SIXTH creates a nondischargeable support obligation, the Court must now determine the amount of the indebtedness. Because the parties have sold the real estate and Mrs. Delaine has been released from the mortgage indebtedness, the Court concludes that Mr. Delaine is liable to Mrs. Delaine for all mortgage payments made by her after the divorce decree was entered and to the extent of the arrearage that existed at the time of the sale of the marital home to the Larkins. Affidavits and counter affidavits which were filed with the Court to supplement the record establish that Mrs. Delaine made no mortgage payments after the divorce and that the amount of the arrearage when the house was sold was $4,401.42.[9] The Court finds this amount nondischargeable pursuant to 11 U.S.C. Section 523(a)(5) (1984). The parties do not dispute that the $33.00 arrearage and the $150.00 per month for child support pursuant to paragraph FOURTH of the divorce decree is nondischargeable pursuant to 11 U.S.C. Section 523(a)(5) (1984).

II. Thompson Case.

The parties have stipulated that Mr. Thompson's obligations under paragraphs 6 and 10 for child support, and medical expenses in the amounts of $1,200.00 and $2,375.04, respectively, are non-dischargeable. Mr. Thompson stipulates that the amount of the attorney's fees owed is $800.00 but argues that these fees are dischargeable. The parties' major point of disagreement is the dischargeability of Mr. Thompson's obligation to hold Mrs. Mul-

drew harmless on the lake house and automobile indebtedness pursuant to paragraphs 7 and 8 of the original decree.

Initially, the Court rejects Mr. Thompson's contention that his obligation to pay his ex-wife's attorney's fees is dischargeable. Substantial case law is to the contrary. *See In re Williams,* 703 F.2d 1055 (8th Cir.1983); *In re Spong,* 661 F.2d 6 (2nd Cir.1981); *In re Nunnally,* 506 F.2d 1024 (5th Cir.1975) (Act Case).

■ After considering the four corners of the original decree, the Court determines that Mr. Thompson's obligation to hold his ex-wife harmless on the lake house and automobile indebtedness is not "in the nature of alimony, maintenance or support", *see In re Harrell,* 754 F.2d 902 (11th Cir. 1985), but is instead part of the couple's property settlement. The obligations imposed upon the debtor by paragraphs 7 and 8 of the original decree are, therefore, due to be discharged pursuant to 11 U.S.C. Section 727 (1984).

The Court notes that the debtor's alimony and child support obligations were set out in separate paragraphs while paragraphs 7 and 8 clearly make a division of the marital property. Mr. Thompson was ordered to pay the entire indebtedness, not merely the payments; further, such obligation was not conditioned upon the remarriage of his ex-wife or the minor child's reaching majority. Also, Mr. Thompson was ordered to transfer his title and ownership of the lake house and the automobile to his ex-wife. Mrs. Muldrew's right to have Mr. Thompson pay the debts on the lake house and the automobile constituted either alimony in gross or a property settlement which was not subject to modification as the divorce court so held in its ORDER of October 13, 1983. As was stated by the Alabama Supreme Court in *McEntire v. McEntire,* 345 So.2d 316 (Ala.Civ.App.1977) construing a similar provision:

---

9. The arrearage is calculated as follows: seven months times ($316.84 + $402.46 = $719.30) = $5,035.10 less a payment of $633.38 made by

Mr. Delaine leaves a total arrearage of $4,401.42.

The pertinent portion of the divorce decree provides as follows:

"(7) That as and for a property settlement between the parties and alimony in gross to the Plaintiff, the Defendant shall convey by proper deed, within 10 days of the date hereof, all of his right, title and interest in and to the real estate at 105 North Roberta Avenue in the city of Dothan, Alabama and the Defendant shall assume and pay as his sole debt and obligation any indebtedness owing on said real estate and shall make any monthly installments due thereon as the same become due and upon the Defendant's failure to execute said deed as aforesaid, the said Clerk shall make such conveyance by Register's Deed; ..."

It appears that the trial court intended the requirement that the husband assume the mortgage liability to be part of either the property settlement or the award of alimony in gross. However, whichever classification is placed on the award to the wife is irrelevant here for the reason that neither type of award can be modified once it becomes final.

*McEntire*, 345 So.2d at 319. Since the obligation imposed upon Mr. Thompson by paragraphs 7 and 8 were not modifiable, they became "vested". *See Hager v. Hager*, 293 Ala. 47, 54, 299 So.2d 743, 750

(1974). All of these factors support the Court's determination that paragraphs 7 and 8 were intended to be a property settlement and not in the nature of alimony, maintenance or support under federal bankruptcy law.

Mrs. Muldrew testified that she was not able to make the payments on the lake house and on the automobile herself. She, therefore, contends that the payments by Mr. Thompson were necessary for her maintenance and support. While Mrs. Muldrew may have needed Mr. Thompson to make the payments, the Court cannot disregard her testimony that she understood this obligation to be part of the parties' property settlement.

Mrs. Muldrew also relies heavily upon paragraph 9 of the decree which summarily characterizes Mr. Thompson's obligation to pay "any and all joint indebtedness of the parties" as alimony and requires Mr. Thompson to hold his ex-wife harmless on such debts. Pursuant to 11 U.S.C. Section 523(a)(5)(B) (1984), the Court is not bound by the designation in the decree. Adopting Mrs. Muldrew's contention could eviscerate Mr. Thompson's right to a fresh start by allowing creditors on all joint debts to collect them from the debtor through the debtor's ex-wife.[10]

---

**10.** On this point Judge Norton has stated:

As with all other types of debt for which an exception to discharge is sought pursuant to Code Section 523(a)(5), it is necessary to determine whether the hold harmless agreement and subsequent court order were intended to discharge the debtor's duty of support. If the parties merely apportioned the marital debt between themselves, an agreement to hold the other harmless with respect to particular debts is not itself excepted from discharge because the obligations assumed in the marital settlement agreement were not intended to discharge the duty of support.

Norton Bankr. L. & Prac. Section 27.65 (1981). As was made clear in the *Harrell* case only those

joint debts which are actually in the nature of alimony, maintenance, or support are non-dischargeable under an agreement to the debtor to hold the ex-wife harmless on joint debts. *Harrell*, 754 F.2d at 906–07 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 6319). This is consistent with this Court's previous ruling in the case of *In re Beaty*, (BK82–3092, AP82–0887) (Bkrtcy.N.D.Ala.W.D.1982) wherein the Court ruled that an obligation to hold the ex-spouse harmless on joint debts was non-dischargeable with respect to necessaries and household living expenses. In the instant case, only the medical expense debt would fall in this category.

## CONCLUSION

The following is a chart of the conclusions herein:

| PARAGRAPH NUMBER | SUBJECT | PERIODIC ALIMONY IS MODIFIABLE | ALABAMA LAW — PROPERTY SETTLEMENT OR ALIMONY IN GROSS LUMP SUM IS NON-MODIFIABLE | FEDERAL LAW Sec. 523(a)(5) — IN NATURE OF ALIMONY OR SUPPORT IS NON-DISCHARGEABLE | FEDERAL LAW Sec. 523(a)(5) — PROPERTY SETTLEMENT IS DISCHARGEABLE |
|---|---|---|---|---|---|
| **DELAINE** | | | | | |
| 4 | $150/mo. Child Support | X | | X | |
| 6 | Home to wife. Husband pay mortgage payments "as long as" wife unmarried or child attains 19. On sale proceeds divided. | X | | X | |
| 7 | Other real property to H. | | X | | X |
| **THOMPSON** | | | | | |
| 5 | $100/mo. "as periodic alimony | X | | X | |
| 6 | $300/mo. for child support | X | | X | |
| 7 | Lake property to wife. Husband to indemnify and hold harmless mortgage payments | | X | | X |
| 8 | 1981 Buick to Wife. Husband to indemnify and hold harmless payments | | X | | X |
| 9 | Husband hold wife harmless joint debts for medical expenses of $2,375.04 | | | X | |
| 12 | Husband pay $800 attorney fees | | | X | |

Separate judgments will be entered consistent with this opinion.