**In re Gustavo E. GOMEZ MOLINA, Debtor.**

**Bankruptcy No. B–86–01719(ESL).**

United States Bankruptcy Court, D. Puerto Rico.

Aug. 21, 1987.

Sergio Ramirez de Arellano, Hato Rey, P.R., for debtor.

Myrna Rodriguez de Abadie, Servicios Legales de Puerto Rico, H. Febus Bernardini, Ponce, P.R., for debtor's wife.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

The controversy before this Court is whether the continuation of a state court proceeding for collection of alimony by the debtor's estranged wife is a violation to the automatic stay pursuant to Section 362(a) of the Bankruptcy Code, Title 11, United

States Code, or if the same is excepted by Section 362(b)(2).

On December 17, 1986, debtor Gustavo E. Gómez Molina moved the Court requesting that an Order to Show Cause be entered against his wife, Mrs. Awilda Vega de Gómez, and her attorney, H. Febus Bernardini, for violation of the automatic stay, specifically for continuing the collection proceedings before the state court after the filing of the bankruptcy petition.

Mrs. Awilda Vega de Gómez alleges that the automatic stay does not apply to proceedings for collection of alimony pursuant to § 362(b)(2) of the Bankruptcy Code.

On January 9, 1987 an Order to Show Cause was entered, and Mrs. Awilda Vega de Gómez and her attorney H. Febus Bernardini were requested to appear before this Court on February 2, 1987. The parties were heard on that date and the Court granted them fifteen (15) days thereafter to file legal memoranda, which they did accordingly.

Pursuant to Bankruptcy Rule 7052 and the pleadings submitted by the parties, the Court now enters the following findings of fact and conclusions of law.

### Findings of Fact

1. On August 26, 1986 the debtor, his wife and their attorneys appeared before the Superior Court of Puerto Rico, Ponce Part (hereinafter "Superior Court"), Civil No. RF–85–937 for a hearing to show cause scheduled pursuant to the minutes previously notified by said court. At the hearing, an agreement was reached by the parties to cure the arrears of the mortgage with the Royal Bank within twenty (20) days. The Superior Court granted Mr. Gustavo Gómez, debtor herein, until September 19, 1986 to cure said arrears, otherwise Mrs. Awilda Vega de Gómez would inform the Court and a determination would be made by the Superior Court without further notice.

2. On September 19, 1986, the debtor filed bankruptcy under Chapter 13.

3. The debtor failed to cure the arrears by September 19, 1986 as ordered by the Superior Court, and, instead, filed a petition in bankruptcy. Mrs. Awilda Vega de Gómez continued with the alimony collection action in the Superior Court.

4. The Superior Court issued a Resolution dated January 14, 1987, and entered on January 16, 1987, imposing the debtor the monthly amount of two thousand dollars ($2,000.00) in alimony payments to be deposited at the Clerk's Office of the Superior Court. The Court Resolution stated that said global amount for alimony includes and provides for the two mortgage payments of the family home, to wit, $448.00 to R–G Mortgage Corporation to cover the first mortgage and $387.78 to Royal Bank to cover the second mortgage, in order that Mrs. Awilda Vega de Gómez would be able to make the mortgage payments on time and avoid any arrears with this two creditors. The Superior Court Resolution was made retroactive to January 1, 1987.

### Conclusions of Law

The issue of whether the debtor's wife has violated the automatic stay by proceeding with a collection action of alimony in the Superior Court triggers several important issues that must be reviewed before reaching our final conclusion. We proceed accordingly.

### Property Protected by the Automatic Stay

When the debtor files for bankruptcy an estate is created comprised of all the property and all the property interests that the debtor has as of the date of the filing of the petition. Section 541 (11 U.S.C. § 541) provides the definition of what constitutes property of the estate; which definition is to be interpreted broadly. Section 1306 (11 U.S.C. § 1306) further broadens the definition of property of the estate for Chapter 13 purposes to include all property acquired and all earnings from services performed by the debtor after the commencement of the case. See, S.Rep. No. 95–989, 95th Congress, 2d Sess. 140–141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, reprinted in Bkr–L Ed, Legislative History § 83:11. This estate is pro-

tected by the automatic stay provisions of § 362 of the Bankruptcy Code.

Pursuant to the provisions of § 362, a creditor is barred to commence or continue any collection action against the debtor (§ 362(a)(1)), against the property of the estate (§ 362(a)(2), (3), (4)), and against the property of the debtor (§ 362(a)(5)). Section 362(a) stays all the proceedings against the debtor that were or could have been commenced before the commencement of the bankruptcy proceeding or to recover a claim against the debtor that arose before the commencement of the proceeding. See, Bkr–L Ed § 15:19. Thus, both the property of the estate and the property of the debtor are protected by two distinct stay provisions, § 362(a)(1) to (4) and (5) respectively.

The Bankruptcy Code does not provide a definition for property of the debtor. However, it is clear that there is a distinction between property of the estate and property of the debtor. See 11 U.S.C. § 362(a)(5). The legislative intent of Congress provides in its relevant part that:

"Paragraph (5) [11 U.S.C. § 362(a)(5)] stays any act to create or enforce a lien against property of the debtor, that is, most *property* that is *acquired after the date of the filing of the petition, property that is exempted, or property that does not pass to the estate,* to the extent that the lien secures a prepetition claim." (Emphasis supplied).
H.Rep. No. 95–595, 95th Congress, 1st Sess. 341 (1977), U.S.Code Cong. & Admin.News 1978, p. 6298, reprinted in Bkr–L Ed, Legislative History, § 82:16.

In the present case the debtor has claimed an exemption over real estate property (Schedule B–4 of debtor's petition filed September 19, 1986) in which he has an interest together with his spouse as a conjugal partnership. Therefore, the extent of debtor's property interest is protected by the automatic stay as provided in § 362(a)(5) because the same is property of the debtor.

*Conjugal Partnership under the law of Puerto Rico*

As a general rule the institution of marriage is governed by local law. In Puerto Rico the provisions that govern the marriage institution are included in the Civil Code of Puerto Rico, Title 31, Laws of Puerto Rico Annotated (hereinafter "L.P.R. A.").

In the present case the debtor is still legally married. Consequently, the Court must examine the law of Puerto Rico regarding the institution of marriage, the rights and duties of each spouse, and whether there is community property.

Section 221, 31 L.P.R.A. provides a definition of marriage:

"Marriage is a civil institution, originating in a civil contract whereby a man and a woman mutually agree to become husband and wife and to discharge toward each other the duties imposed by law. It is valid only when contracted and solemnized in accordance with the provisions of law; and it may be dissolved before the death of either party only in the cases expressly provided for in this title."

Under the law of Puerto Rico, when two persons get married a judicial entity called conjugal partnership is created since the day that the marriage is celebrated.[1] However, this conjugal partnership is a *sui generis* entity with an "attenuated" legal personality. *Rodríguez Hernández v. Almodóvar,* 631 F.Supp. 960 (D.P.R.1986).

In the case of *Torres v. W.R.A.,* 96 P.R.R. 634, 638–639 (1968), the Supreme Court of Puerto Rico defined conjugal partnership and held that:

"Nobody denies that the conjugal partnership has a juridic personality, since it possesses the necessary requirements to have its own personality: existence of a common interest, consciousness of the same, and organization of the community. But it is a *familiar economic entity*

---

1. 31 L.P.R.A. § 3622 provides that:
"The conjugal partnership shall always begin on the same day that the marriage is celebrated. Any stipulation to the contrary shall be void."

*sui generis,* having special characteristics, which does not have the same degree of juridic personality of ordinary partnerships or corporate entities, ... It is a necessary and legal partnership, contracted for the purpose of maintaining and contributing to bear the marriage burdens, not instituted for a speculative purpose, but strengthened by the love of the spouses and which unites them in order to meet more effectively the burdens and obligations of their status with the earnings obtained during the marriage." (Emphasis supplied).

In the case of *International Charter Mortgage Corporation v. The Registrar of Property of Puerto Rico, Barranquitas Section.* 110 D.P.R. 862 (1981) and Volume 10 Official Translations of the Opinions of the Supreme Court of Puerto Rico at page 1127, 1130–1131, the Supreme Court of Puerto Rico outlined the differences between a partnership and a conjugal partnership. The Court held that:

"In rejecting the doctrine that considers the marital community a true partnership, the authorities [* 5 Puig Peña, *Compendio de Derecho Civil Español,* 146 (3d. ed.) (Ediciones Pirámide) (Madrid); 4–1 Puig Brutau, *Fundamentos de Derecho Civil* 595, 596 (Ed. Bosch) (Barcelona 1967).] point out the following differences between them: a) the partnership is a contract born from the will of the parties, whereas the marital community, although it may be expressly constituted in a marriage contract, is generally formed by the fact of marriage, there being no need for a stipulation; b) the partnership may be constituted by two or more people of any sex, whereas the marital community of the general civil law may only be constituted by husband and wife, because it is the result of marriage; c) the partnership begins and ends only when the circumstances provided by law are present; d) in the ordinary partnership, the parties may change or modify their stipulations at any time; in the marital community they are irrevocable once the marriage is held; e) in the partnership, the sharing in the profits is so essential that if the partners stipulate that one of them is to take all the profits, the partnership becomes null, but in the marital community this requirement is not necessary; the woman may renounce her right to the community property in advance, in which case it all belongs to the husband; f) in the partnership, the proceeds are distributed in the stipulated manner and, absent stipulation, they are prorated according to each partner's contribution. In the marital community, on the other hand, the community property is divided in half, regardless of the contributions made by each spouse, and even though one of the spouses may have made no contribution at all; g) it may not be dissolved as a result of the unilateral will of one partner, and there is no possibility of adding a third partner. We must add that in the marital community the existence or nonexistence of profits is immaterial, profit as an end is excluded by a higher purpose and destiny; to make possible the most perfect realization of the ends of marriage, the common investment of the spouses in terms of their working capacity and of the fruits of their own property to promote an economy that serves the fulfillment of their mutual marital duties and of their duties toward their children, and the sharing in the profits, if there are any, when the community is dissolved."

Section 3641, 31 L.P.R.A. defines what property belongs to the conjugal partnership as follows:

"To the conjugal partnership belong:

1. *Property* acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

2. That obtained by the industry, *salaries,* or work of the spouses or of either of them.

3. The fruits, *income,* or interest collect or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses." (Emphasis supplied).

See also, Section 3621, 31 L.P.R.A.[2] regarding the earnings received during the marriage.

The Puerto Rico Civil Code provides that the administration of the conjugal partnership lies on both spouses. Section 284, 31 L.P.R.A. provides that:

"*Both spouses* shall be *administrators of the community property,* except when otherwise stipulated, in which case one of the spouses shall grant a mandate to the other to act as administrator of the community property.

Purchases made by either of the spouses out of said property shall be valid when they comprise things or articles for personal or family use in accordance with the social and economic standing of the family. Provided, that either of the spouses may make said purchases in cash or on credit.

The *real property of the conjugal community may not be alienated or encumbered,* under penalty of nullity, *except with the written consent of both spouses....*" (Emphasis supplied).

*See, Cruz Viera v. The Registrar of Property of Puerto Rico, Manatí Section,* CA–87–43 (May 11, 1987).

Other relevant provisions regarding the conjugal partnership are Sections 3623, 3624, 3647, 3661, 3672, and 3681, Title 31 L.P.R.A.

A synthesis of the aforestated indicates the following: Under the law of Puerto Rico a conjugal partnership is created upon the celebration of the marriage. The conjugal partnership is a *sui generis* legal entity and all the property acquired by the spouses during the existence of the marriage belongs to the conjugal partnership as community property. The salaries, earnings and income of both spouses belong to the conjugal partnership until its dissolution. Under the conjugal partnership provisions both spouses are coadministrators of the community property.

A written consent of the spouses is needed in acts involving transfers or encumbrance of community property. The consent of the spouses is also needed in acts of administration of the community property. See, 31 L.P.R.A. § 3672.[3] *See* also, *Aguilú v. Sociedad de Gananciales,* 106 D.P.R. 652 (1977). Although Section 286[4] specifically provides that either spouse may legally represent the conjugal partnership, and that any unilateral act of administration will be presumed legally valid and will bind the conjugal partnership, this section must be read and interpreted together with Section 3672, which limits the scope of said unilateral acts of administration. Section 3672, 31 L.P.R.A. specifically provides that the unilateral acts of administration shall not affect the other spouse nor his/her heirs, and in the event that the conjugal partnership is affected by any such acts, then the conjugal partnership is entitled to damages upon the dissolution of the conjugal partnership.

**2.** 31 L.P.R.A. § 3621 provides that:

"By virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage."

**3.** 31 L.P.R.A. § 3672 provides that:

"Notwithstanding the provisions of section 284 of this title, neither of the two spouses may donate, alienate *or bind* for a consideration the *personal or real property of the community property without the written consent of the other spouse,* excepting things for personal or family use in accordance with the social or economic standing of both spouses.

*Any disposal or administration act made with respect to said property by either of the spouses* in violation of this and any other section of this title *shall not affect the other spouse or his heirs.*

The spouses engaged in commerce industry or a profession may, for good cause, acquire or dispose of the personal property used for such purposes without the consent of the other spouse. Said spouse shall, however, be liable for the *damages* he or she may cause by said acts to the community property. This action shall be exercised exclusively at the time of the dissolution of the community property." (Emphasis supplied).

**4.** 31 L.P.R.A. § 286 provides that:

"*Save as provided in section 284 of this title,* either of the spouses may legally represent the conjugal community. Any unilateral administration act of one of the spouses shall bind the community property and shall be presumed valid to all legal effects."

See, L. Dershowitz & Co., Inc. v. Regis-trador, 105 D.P.R. 267 (1967); Aguilú v. Sociedad de Gananciales, 106 D.P.R. 652 (1977); García v. Montero Saldaña, 107 D.P.R. 319 (1978); International Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862 (1981); Cruz Viera v. Registrador, CA–87–43 (May 11, 1987); Torres Torres Rafael, La co-administración de la socie-dad de gananciales, 64 Revista de Derecho Puertorriqueño 413 (1976–77).

### Conflict between the law of Puerto Rico and the Bankruptcy Code

■ The Bankruptcy Code does not have a specific provision for the filing of a peti-tion by a conjugal partnership. However, the Bankruptcy Code does provide for an entity or an individual or joint individuals who are legally married to file bankruptcy, 11 U.S.C. § 301, 302.

The "Historical and Revision Notes" to Section 302, 11 U.S.C., state that:

"A joint case is a voluntary bankrupt-cy case concerning a wife and a hus-band....

Section 302 specifies that a joint case is commenced by the filing of a petition under an appropriate chapter by an indi-vidual and that individual's spouse. Thus, *one spouse cannot take the other into bankruptcy without the other's knowledge or consent.*" (Emphasis sup-plied). (S.Rep. No. 95–989, 95th Con-gress, 2d Sess. 32 (1928) reprinted in Bkr–L Ed, Legislative History § 83:6).

Moreover, Section 303 of the Bankruptcy Code specifically forbids the filing of an involuntary petition against a person under Chapter 13. Therefore, a debtor who is married and wishes to file a Chapter 13 petition has only two alternatives, either the debtor files a voluntary joint petition with his/her spouse, or the debtor files the Chapter 13 petition with the knowledge or consent of his/her spouse. Otherwise, the result will be that the non consenting spouse will be brought into bankruptcy as an involuntary Chapter 13 debtor. Such an action is specifically prohibited by Section 303 of the Bankruptcy Code.

In the instant case, the debtor filed a Chapter 13 petition without the knowledge or consent of his wife. The effect being that the debtor's wife is an involuntary debtor in a Chapter 13 case. Such an anomaly is prohibited by Section 303 of the Bankruptcy Code.

■ Furthermore, under current bank-ruptcy law and the law of Puerto Rico, the filing of a bankruptcy petition is an act of administration. Pursuant to the aforecited provisions of the Civil Code of Puerto Rico, both spouses are coadministrators of the community prcperty that belongs to the conjugal partnership, and the spouses' con-sent is a prerequisite to acts of administra-tion and acts of transfer of property. Moreover, under the law of Puerto Rico, future wages belong to the conjugal part-nership and not to each partner in their individual capacity. In the instant case, the debtor is proposing a plan to be paid with future wages that do not belong to the debtor but to a different entity, the conjugal partnership, which is not before the bankruptcy court.

Although the bankruptcy law preempts the matter of the future wages by specifi-cally providing that they are property of the estate under a Chapter 13 petition (11 U.S.C. § 1306), both the bankruptcy law and the law of Puerto Rico coincide in that the consent of the wife is necessary to perform an act of administration such as the filing of a bankruptcy petition. In this case, the debtor failed to notify or get the consent of his wife to file the Chapter 13 petition. This matter not only may be con-templated as a bad faith filing under cur-rent bankruptcy law, but it is also in con-flict with the aforecited provisions of conju-gal partnership of the Civil Code of Puerto Rico.

### Conclusion

■ In the instant case, debtor's interest in the community property and the proper-ty of the debtor is technically protected by the automatic stay (11 U.S.C. § 362), as the same becomes operative by the mere filing of the Chapter 13 petition, albeit without the consent of his wife. Since the monies

374

to be used by the debtor to pay the proposed Chapter 13 plan belong to the conjugal partnership comprised by the debtor and his wife, and not to the debtor as an individual, we find that the proposed Chapter 13 plan may have been filed in bad faith as the same lacks the consent of his wife. Under the law of Puerto Rico all the earnings received during the existence of the conjugal partnership belong to this entity and not to its partners in their individual capacity (31 L.P.R.A. §§ 3641, 3621). Accordingly, one spouse cannot freely dispose of the future earnings that belong to the conjugal partnership without the knowledge or consent of the other spouse.

Furthermore, in the instant case the Resolution of the Superior Court fixing the alimony and child support precedes the order of the bankruptcy court confirming the Chapter 13 plan. The filing of a Chapter 13 proceeding does not automatically stay the enforcement of alimony and child support obligations. *In re Garrison*, 5 B.R. 256, 260–261 (Bankr.E.D. Michigan 1980). *See* also, *Gonzalez Hernandez v. Borgos*, 343 F.2d 802 (1st Cir.1965).

In view of the foregoing, it is now ORDERED that the order to show cause for contempt against debtor's wife and her attorney be and the same is hereby vacated and set aside; and it is further

ORDERED that the debtor appear before the undersigned bankruptcy judge to show cause, if any there be, why the order of confirmation should not be revoked, and why this case should not be dismissed for lack of good faith.

A hearing on this matter is hereby set for November 11, 1987 at 9:00 A.M..

SO ORDERED.