In re Sa'ad EL–AMIN Debtor.

Carolyn GAUTIER–ADAMS Movant,

v.

Sa'ad EL–AMIN Respondent.

Bankruptcy No. 90–31491–T.
Contested Matter No. 90–463.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 11, 1991.

David D. Hopper, Mezzullo & McCandlish, P.C., Richmond, Va., for plaintiff.

Leonard E. Starr, III, Farmer, Starr & Holmes, Sandston, Va., for debtor/defendant.

Kevin R. Huennekens, Trustee, Maloney, Yeatts & Barr, P.C., Richmond, Va.

Mary E. Harkins, Office of the U.S. Trustee, Richmond, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

In this contested matter the debtor's former wife, Carolyn Gautier–Adams, filed a motion seeking relief from the automatic stay so that she might pursue collection of a prepetition divorce judgment against the debtor.

A preliminary hearing was held on September 12, 1990, at which time the court took evidence and ruled that the motion would be granted in part and denied in part. After the parties' counsel were unable to agree on the form of an order reflecting the court's ruling, Gautier–Adams requested a final hearing which was held on November 21, 1990. For reasons stated in this opinion the movant's motion will be partially granted and partially denied.

*Facts*

Prior to filing his bankruptcy petition, the debtor was divorced from Gautier–Adams by a decree entered in the City of Richmond Circuit Court on March 22, 1990. That decree ordered debtor to pay $4,500.00 per month in spousal support and $1,500.00 per month as child support; additionally, debtor was held responsible for maintaining health insurance and payment of all uncovered medical expenses of the couple's child. The decree also found that on January 6, 1990, debtor was in arrears of his support obligations in the amount of $28,000.00.

Also prior to the bankruptcy, the circuit court had found debtor in contempt of court for failure to comply with the divorce decree and ordered him to spend six months in jail. The sentence was suspended upon condition that debtor make support payments to Gautier–Adams in a timely manner and bring current all arrearage within 90 days.[1]

*Bankruptcy Case Proceedings*

The debtor originally filed a chapter 7 petition on May 11, 1990. The case was converted on the debtor's motion to a case under chapter 11 on June 14, 1990. Gautier–Adams' motion for relief from the automatic stay was filed on July 26, 1990.

In her motion, Gautier–Adams asserted that debtor had violated the circuit court contempt order by failing to make April and May 1990 payments in a timely manner, failing to make payment on the prior arrearage, failing to maintain health insurance coverage for the child, and failing to pay for the child's uncovered medical expenses.

At the September 12, 1990, preliminary hearing this court heard evidence and made findings that the debtor was required by

1. The date of the circuit court's contempt order is unclear. Gautier–Adams maintains in her motion for relief stay and her brief in support of relief that the order is dated February 7, 1990, nunc pro tunc January 19, 1990. However, the copy of the order attached as Exhibit B to Gautier–Adams' brief in support contains notations which cast doubt on these dates.

the divorce decree to pay for the child's insurance and other medical costs, to make monthly payments of $6,000.00 to Gautier–Adams, and to make payment of the $28,-000.00 arrearage. It appeared from the argument of debtor's counsel that debtor was seeking to modify the support arrearage determined by the circuit court. The debtor also contested the amount due for payment of medical fees, arguing that the decree did not extend to certain medical treatments.

At the preliminary hearing, counsel for Gautier–Adams sought relief from the stay to pursue collection against the debtor, including jail pursuant to the circuit court's contempt ruling.[2] However, this court determined that the debtor's being placed in jail would likely preclude a successful reorganization. I therefore ruled that relief from the stay would be allowed only for the limited purpose of liquidating the amount due; the stay would be continued to prevent any effort at collection from property of the estate. My ruling was to be conditioned on the debtor complying with his medical insurance obligation and continuing to make current support payments.

Although this court had requested counsel for both parties to prepare an order reflecting the ruling of September 12, no order was forthcoming. Instead, in October 1990 Gautier–Adams requested a final hearing on her motion, which was held on November 21, 1990. At this hearing, the debtor testified that he had provided medical insurance for the child. It again appeared that the debtor contested the extent the divorce decree required him to pay medical costs of his daughter, as well as the amount of arrearage. The court took the motion under advisement to allow the parties to submit case authority for their positions. Gautier–Adams filed a brief, but nothing was filed by the debtor.

Gautier–Adams argues that relief from the stay should be granted to allow the state court to determine the extent of the debtor's obligation to pay the daughter's medical expenses and to adjudicate the extent of his support arrearage. In addition, Gautier–Adams argues that relief should be granted to allow her to collect the past due support obligations and to ensure timely future payments. This opinion will address each proposition.

### Discussion And Conclusions

### I. RELIEF TO ADJUDICATE EXTENT OF SUPPORT OBLIGATION AND ARREARAGE

■ The parties differ on their interpretation of the extent of the debtor's obligations under the divorce decree. The debtor's position is that the decree does not cover certain medical expenses, and his counsel has also expressed the hope that this court can modify the amount in arrears. Gautier–Adams contends that these disputes must be resolved in the state court rather than the bankruptcy court.

Section 362(d) provides in part that the bankruptcy court may grant relief from the automatic stay for "cause".[3] The statute does not define what constitutes cause, and that is left for case law to determine. Whether to grant the relief is within the discretion of the bankruptcy court. *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023, 1026 (11th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989); *Pursifull v. Eakin,* 814 F.2d 1501, 1504 (10th Cir.1987); *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 716 (9th Cir.1985).

---

**2.** The motion for relief from the stay also requested relief to allow a special commissioner to execute documents to carry out property distribution as ordered in the divorce decree. Since the parties have made no argument regarding this request the court will not address the issue.

**3.** Section 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d)(1).

In this case there is a dispute both as to the amount of the debtor's support obligations and as to whether they should be modified. The question is whether the existence of either dispute may constitute cause for relief from the stay so that the debtor's former spouse may pursue the matter against debtor in state court.

Some courts have taken the position that the bankruptcy court is without jurisdiction to modify a debtor's support obligation. *See, e.g., Sharp v. Harrell (In re Harrell),* 33 B.R. 989, 995 (N.D.Ga.1983), *aff'd,* 754 F.2d 902 (11th Cir.1985) (bankruptcy court is without jurisdiction to establish or modify a debtor's child support obligation); *Brown v. Brown (In re Brown),* 46 B.R. 612, 614 (Bankr.S.D. Ohio 1985) (bankruptcy court must abstain from considering changed circumstances to modify amount of nondischargeable support obligation); *Hund v. Miller (In re Miller),* 36 B.R. 403, 405 (Bankr.N.D. Ohio 1984) (bankruptcy court lacks jurisdiction to modify or vacate support order).

Other courts take the position that the bankruptcy court has jurisdiction but should abstain from exercising it. *See, e.g., Schmiel v. Judge (In re Schmiel),* 94 B.R. 373, 376 (Bankr.E.D.Pa.1988) (bankruptcy court should defer to state court to liquidate amount of nondischargeable debt); *Baker v. Baker (In re Baker),* 75 B.R. 120, 121 (Bankr.D.Del.1987) (bankruptcy court should defer to the expertise of the state's domestic court in the interest of justice and court economy).

It is difficult to find a bankruptcy court willing to modify a support obligation and actually say that it is doing so. Admittedly, the cases cited above all arose in the context of § 523(a)(5) dischargeability proceedings, and those courts that do permit the court to modify support obligations do so in the process of determining whether the obligation is actually in the nature of alimony, support, or maintenance. *See Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1110 (6th Cir.1983) (in a § 523(a)(5) dischargeability determination bankruptcy court must examine not only the intent of the state court but also determine whether the *effect* of the state court order is to provide support); *Warner v. Warner (In re Warner),* 5 B.R. 434, 442 (Bankr.D. Utah 1980) (in a § 523(a)(5) determination bankruptcy court must consider whether present circumstances have changed an order that originally was in the nature of support).

Regardless of whether the ground is jurisdictional, however, the courts' restraint in modifying support obligations is illustrative of the reluctance of bankruptcy courts to make determinations on domestic issues. *See, e.g., White v. White (In re White),* 851 F.2d 170, 173 (6th Cir.1988); *MacDonald v. MacDonald (In re MacDonald),* 755 F.2d at 719; *Boyd v. Robinson (In re Boyd),* 31 B.R. 591, 596 (D.Minn.1983), *aff'd,* 741 F.2d 1112 (8th Cir.1984). The rationale for this reluctance to modify support obligations is that it involves an area of law traditionally left to state court systems since state courts are considered to have expertise in family law matters. *MacDonald,* 755 F.2d at 717; *Baker,* 75 B.R. at 121.

The same reluctance exists in the context of relief stay matters. *See, e.g., White,* 851 F.2d 170 (affirming bankruptcy court's grant of relief to allow state court divorce action to proceed); *MacDonald,* 755 F.2d 715 (affirming bankruptcy court's grant of relief for spouse to pursue modification of support order); *In re Hill,* 102 B.R. 804 (D.Kan.1989) (affirming bankruptcy court's lifting of the stay to permit spouse to proceed with state court action to modify child support); *Harrell v. Harrell,* 105 B.R. 751 (Bankr.M.D.Ga.1989) (relief granted allowing spouse to proceed in state court to modify child support obligation and visitation rights); *Baker,* 75 B.R. at 121 (relief granted to permit divorce action to proceed to determine rights in marital property); *In re Kincaid,* 55 B.R. 652 (Bankr.W.D.Ky. 1985) (relief granted to allow state court to clarify whether its judgment setting aside property settlement and awarding a sum of money to spouse was retroactive to date of divorce).

Based upon the authorities cited above I find that the state court system is the better forum to determine the extent of

debtor's spousal and child support obligations. Therefore it is held that cause exists to modify the stay to permit Gautier–Adams to proceed against the debtor in the City of Richmond Circuit Court to determine the amount and kind of support owed, and relief from the automatic stay is granted to this extent. It follows that debtor's hoped for modification of his obligations also must be pursued in the circuit court.

This leaves the second part of the issue, whether relief should be granted from the stay to permit collection of debtor's prepetition arrearage from property of the estate.

## II. RELIEF TO PERMIT COLLECTION OF PREPETITION ARREARAGE FROM PROPERTY OF THE ESTATE

■ Gautier–Adams also requests relief from the stay in order to pursue collection efforts from the debtor. In support, she relies upon the decision of the Fourth Circuit Court of Appeals in *Caswell v. Lang (In re Caswell)*, 757 F.2d 608 (4th Cir.1985), which denied confirmation of a chapter 13 plan that included provision for child support arrearage. Gautier–Adams maintains that since support arrearage cannot be included in a plan of reorganization, relief from the stay is warranted to permit collection, even if this includes imposition of the debtor's jail sentence for contempt of the circuit court.

In applying the rule in *Caswell* denying confirmability of chapter 13 plans that include support obligations, several bankruptcy courts have either granted relief from the automatic stay or dismissed the case. *See In re Warner*, 115 B.R. 233 (Bankr.C.D.Cal.1989) (dismissing chapter 13 case); *Bruggen v. Bruggen (In re Bruggen)*, 82 B.R. 515 (Bankr.W.D.Mo.1987) (granting relief from the stay to enforce child support award in state courts); *In re Davidson*, 72 B.R. 384 (Bankr.D.Colo.1987) (dismissing three chapter 13 cases); *McCray v. McCray (In re McCray)*, 62 B.R. 11 (Bankr.D.Colo.1986) (granting relief from the stay).

Other courts have adopted the extreme position that the automatic stay of § 362 does not apply to enforcement of alimony and child support obligations against the debtor. *In re Gomez Molina*, 77 B.R. 368 (Bankr.D. Puerto Rico 1987); *In re Garrison*, 5 B.R. 256 (Bankr.E.D.Mich.1980).

In other chapter 13 cases, courts have declined to enjoin proceedings to collect past due support obligations. *See Nelson v. Nelson (In re Nelson)*, 85 B.R. 731 (Bankr.E.D.Va.1988); *In re Bernstein*, 20 B.R. 595 (Bankr.M.D.Fla.1982).

This court is not bound by any of the authorities cited above, save the Fourth Circuit *Caswell* case. Moreover, further discussion of *Caswell* is warranted since Gautier–Adams relies upon that decision here for a proposition that was not before the court of appeals.

In *Caswell*, the debtor proposed a chapter 13 plan that created two classes of unsecured creditors, one consisting solely of the debtor's arrearage of $1,400.00 in child support, the other being the rest of his unsecured debts. The plan provided for 100 percent payment of the child support arrearage through the trustee and 25 percent payment on the unsecured obligations. The bankruptcy court denied confirmation of this plan, and the district court affirmed. On appeal to the Fourth Circuit, the debtor asserted that he should be permitted to include child support arrearage in his plan so that he "may be afforded a comprehensive manner of dealing with all his debts, and his creditors may be assured the highest possible payment." *Caswell*, 757 F.2d at 609. The Fourth Circuit rejected this argument stating: "To permit child support arrearage to be included in a chapter 13 plan would invite a federal bankruptcy court to alter or modify a state court decision regarding the payment and discharge of the overdue debt. This we cannot countenance." *Id.* at 610.

*Caswell* did not involve a motion for relief from the automatic stay, and the court of appeals made no ruling with respect to that issue. However, the opinion contains broad language that "[t]he bankruptcy code may not be used to deprive depend-

ents, even temporarily, of the necessities of life." *Id.* On the other hand, the bankruptcy code has been designed to provide for the efficient and orderly administration of a chapter 11 debtor's reorganization, and the purpose of the automatic stay is to shield the debtor from collection efforts during the administration of the case. *Stringer v. Huet (In re Stringer),* 847 F.2d 549, 551–52 (9th Cir.1988).

In my view, debtors with domestic support arrearage should not be excluded from the usual bankruptcy process as a matter of law; yet, this is what follows from the rule urged by Gautier–Adams. A better rule would be to make the determination on a case-by-case basis.

Certainly the statutory scheme suggests the automatic stay applies here to the movant's efforts to collect the debtor's domestic support obligations. In listing types of actions subject to the stay, § 362(a) does not specifically mention collection of this type of debt; however, in listing what is excepted from the stay, § 362(b)(2) states that the stay does not apply to collection of support obligations from property that is *not* property of the estate. 11 U.S.C. § 362(a), 362(b)(2) (1990). Thus a strong inference is that the stay provisions of § 362(a) *do* apply to the collection of domestic support obligations from property of the estate. If Congress had intended otherwise, it would have been a simple matter to resolve in § 362.

This court notes that Gautier–Adams is not completely foreclosed from collection by § 362. At least in chapter 7 and 11 cases, § 541(a)(6) expressly excludes from property of the estate "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).[4] Therefore, by virtue of

§ 362(b)(2), a spouse may proceed to collect from income received by the chapter 11 debtor for services performed after the commencement of the case.[5]

More importantly, the debtor in this case is maintaining current postpetition payments. There is no indication that Gautier–Adams or the child are being deprived of the necessities of life.

These reasons, combined with the almost certain failure of the reorganization in the event the debtor is imprisoned, lead me to conclude that relief from the stay in order to permit Ms. Gautier–Adams to pursue collection of the $28,000.00 support from property of the estate is not appropriate at this point in the case. I therefore find that cause does not exist to lift the stay for that purpose. No ruling need be made at this time whether the $28,000.00 support arrearage may be included in a chapter 11 plan.

A separate order will be entered.

## ORDER

For the reasons stated in the memorandum opinion entered simultaneously with this order, it is ordered that the movant, Carolyn Gautier–Adams, is granted relief from the automatic stay to determine the extent of the debtor's spousal and child support obligations in the divorce decree entered on March 20, 1990, in the Circuit Court for the City of Richmond. It is further ordered that relief is granted from the automatic stay to permit the movant to seek to modify the debtor's spousal and child support obligations.

To the extent that the movant's motion for relief from the automatic stay requests relief from the stay to permit collection of prepetition arrearage from property of the

---

**4.** This provision does not apply in chapter 13 cases because the chapter 13 estate includes not only § 541 property, but also postpetition earnings from personal services. 11 U.S.C. § 1306(a).

Note also that there is a diversity of view as to what extent a chapter 11 debtor's earnings from a sole proprietorship are excluded from being property of the estate. *Compare In re Fitzsimmons,* 725 F.2d 1208 (9th Cir.1984); *with In re Cooley,* 87 B.R. 432 (Bankr.S.D.Tex.1988); *and*

*In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex. 1990). This court adopts no position at this time.

**5.** It is not clear to what extent she can collect, however, from property purchased with postpetition income, since § 541(a)(7) includes in property of the estate: "Any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

estate or any other relief, the movant's motion is denied. Continuation of the automatic stay with respect to collection of prepetition arrearage is conditioned upon the debtor maintaining timely payments on spousal and child support obligations accruing postpetition. In the event the debtor defaults in payment of these obligations, the court will reconsider the motion at movant's request.