ERVIN, Circuit Judge.
 

 The debtor, Leaman H. Caswell, appeals from the district court’s order affirming the bankruptcy court’s order denying confirmation of the debtor’s proposed Chapter 13 plan and holding that past due child support obligations may not be included in a Chapter 13 plan. We affirm.
 

 I.
 

 On July 11, 1983, the debtor filed a Chapter 13 plan in which he proposed to pay an indebtedness to his former wife, Judith N. Lang, for child support payments that were substantially in arrears at the time of filing.
 
 [1]
 

 To eliminate this debt, the debtor’s plan created two classes of unsecured creditors, one of which consisted solely of Judith Lang. The plan required that she be paid in full from the monthly plan payments of $75.00. These payments were to be paid to the Chapter 13 Trustee.
 
 [2]
 
 The plan provid
 
 *609
 
 ed that all other unsecured creditors would be paid 25% of their claims.
 

 Lang originally filed a proof of claim with the bankruptcy court on August 3, 1983. She next filed objections to the confirmation of the plan on September 16, 1983, asserting that the proposed plan was not feasible and that she should receive payment in full prior to all other general unsecured creditors. The bankruptcy court agreed, concluding that since the state has exclusive authority to determine liability for child support, alimony and maintenance, “it would be an unwise assumption of jurisdiction for a federal court” to include these debts in a Chapter 13 plan. To do so, the court held, would require the federal courts “to police child support” and perhaps “to shelter a Chapter 13 debtor ... from child support payments when due.” On appeal, the-district court affirmed the bankruptcy court’s decision, noting that the federal bankruptcy code did not intend for federal courts to “interfere directly with the remedies provided by the state courts.” The court held that the federal courts could not alter payment of or discharge a child support obligation determined in state court.
 

 The debtor now appeals this decision, arguing that child support arrearages are properly included in a Chapter 13 plan so that a debtor may be afforded a comprehensive manner of dealing with all his debts, and his creditors may be assured the highest possible payment.
 

 II.
 

 The debtor argues that two bankruptcy court decisions support his assertion that child support arrearages may be included as a claim to be satisfied in a Chapter 13 plan. First, in
 
 Matter of Curtis,
 
 2 B.R. 43 (Bkrtcy.W.D.Mo.1979), the bankruptcy court concluded that a Chapter 13 plan proposing payments to two classes of unsecured creditors warranted confirmation. One class was composed of 100% payments of past due child support, the other of 10% payments to the remaining creditors. The court ruled that the plan was fair, was proposed in good faith and that there was a rational basis for discrimination between the two classes. Although the court assumed that past due child support payments could properly be included in a Chapter 13 plan, the court did note “that child support payments are generally to be regarded as having a status higher than the ordinary indebtedness under the law of bankruptcy.”
 
 Id.
 
 at 44.
 

 Similarly, in
 
 In re Haag,
 
 3 B.R. 649 (Bkrtcy.D.Ore.1980), also relied upon by the debtor, the bankruptcy court concluded that a Chapter 13 plan proposing 100% payments of past due child support and 25% payments to all other creditors warranted confirmation. The difference between this case and
 
 Curtis
 
 is that the former provided for the past due child support payments to be made outside the plan while the latter contemplated payments through the Trustee as part of the plan. The court in
 
 Haag,
 
 however, treats this distinction as irrelevant since the effect of permitting the past due child support payments to be made outside the plan was to create two classes of unsecured creditors. The court subsequently determined that this distinction had a rational basis and was proper. Although the
 
 Haag
 
 court’s clear premise seems to be that past due child support payments may be included in a Chapter 13 plan, the court did recognize that child support obligations are markedly different from ordinary indebtedness in that they are nondischargeable and may be “enforced through contempt proceedings.”
 
 Id.
 
 at 651.
 

 While both of these decisions are premised on the assumption that child support arrearages may be included in a Chapter 13 plan, neither court squarely decided this specific issue and both recognized the elevated status child support payments are accorded under state and federal law. However, even if both cases are read to firmly support the contention that child suppo) t arrearages may be included in a Chapter 13 plan, this court is not bound by the bankruptcy courts’ interpretations of the law.
 

 
 *610
 
 The Supreme Court has long favored state court retention of exclusive control over the collection of child support.
 
 See In re Burrus,
 
 136 U.S. 586, 593-594, 10 S.Ct. 850, 852-853, 34 L.Ed. 1500 (1890) (“The whole subject of the domestic relations of husband and wife, parent and child, belong to the laws of the States and not to the laws of the United States.”).
 
 See also McCarty v. McCarty,
 
 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981);
 
 Hisquierdo v. Hisquierdo,
 
 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979);
 
 United States v. Yazell,
 
 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966);
 
 Ohio ex rel. Popovici v. Agler,
 
 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930). Pursuant to its police power, Virginia has a strong and compelling interest in protecting the welfare of its dependent citizens.
 
 See
 
 Va.Code § 20-107.2 (1984) (Virginia courts may determine the support and custody of minor children);
 
 see also,
 
 e.g.,
 
 Featherstone v. Brooks,
 
 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979) (Virginia law requires that “both parents of a child owe that child a duty of support during minority.”);
 
 Mullen v. Mullen,
 
 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948) (“In Virginia, we have established the rule that the welfare of the infant is the primary, paramount and controlling consideration of the court in all controversies between parents over custody of their minor children.”). We agree with the district court that it would result in great injustice to ■require children to await a bankruptcy court’s confirmation of a debtor’s Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments. The bankruptcy code may not be used to deprive dependents, even if only temporarily, of the necessities of life.
 

 Equally important, a federal court may not interfere with the remedies provided by a state court in these areas of particular state concern, provided, of course, that these remedies are constitutional.
 
 [3]
 
 To permit child support arrearages to be included in a Chapter 13 plan would invite a federal bankruptcy court to alter or modify a state court decision regarding the payment and discharge of the overdue debt. This we cannot countenance. Rather, we agree with the bankruptcy court in
 
 Matter of Garrison,
 
 5 B.R. 256, 260 (Bkrtcy.E.D.Mich.1980), that it was not the “intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic
 
 *611
 
 relations courts — courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.”
 

 The state court’s determination' respecting the rights of the parties in these areas of state concern should not be disturbed by federal bankruptcy courts. Past due child support obligations may not be included in a Chapter 13 plan under the bankruptcy code.
 

 III.
 

 For the foregoing reasons, the judgment of the district court is
 

 AFFIRMED.
 

 [1]
 

 . At the time of the filing, the debtor was $1,400.00 in arrears in child support payments for a son of a prior marriage to Judith Lang.
 

 [2]
 

 . The Trustee in Bankruptcy, John E. Robins, Jr., filed his report at the confirmation hearing recommending that the plan be confirmed if the payments were increased to $81.30 per month. The debtor agreed to this increase.
 

 [3]
 

 . We are particularly mindful of the Supreme Court’s pronouncement in
 
 Ridgway v. Ridgway,
 
 454 U.S. 46, 54-55, 102 S.Ct. 49, 54-55, 70 L.Ed.2d 39 (1981) that:
 

 Notwithstanding the limited application of federal law in the field of domestic relations generally, see
 
 McCarty v. McCarty,
 
 453 U.S. 210, 220 [101 S.Ct. 2728, 2735, 69 L.Ed.2d 589] (1981);
 
 Hisquierdo v. Hisquierdo,
 
 439 U.S. 572, 581 [99 S.Ct. 802, 808, 59 L.Ed.2d 1] (1979);
 
 In re Burrus,
 
 136 U.S. 586, 593-594 [10 S.Ct. 850, 852-853, 34 L.Ed. 500] (1890), this court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights.
 
 See McCarty v. McCarty,
 
 supra;
 
 Hisquierdo v. Hisquierdo, supra, Free v. Bland,
 
 369 U.S. 663 [82 S.Ct. 1089, 8 L.Ed.2d 180] (1962);
 
 Wissner v. Wissner,
 
 338 U.S. 655 [70 S.Ct. 398, 94 L.Ed. 424] (1950);
 
 McCune v. Essig,
 
 199 U.S. 382 [26 S.Ct. 78, 50 L.Ed. 237] (1905).
 
 Cf. Yiatchos
 
 v.
 
 Yiatchos,
 
 376 U.S. 306, 309 [84 S.Ct. 742, 744, 11 L.Ed.2d 724] (1964). While "[s]tate family and family-property law must do ‘major damage' to ‘clear and substantial’ federal interests before the Supremacy Clause will demand that state law be overridden,"
 
 Hisquierdo,
 
 439 U.S., at 581 [99 S.Ct. at 808], with references to
 
 United States v. Yazell,
 
 382 U.S. 341, 352 [86 S.Ct. 500, 506, 15 L.Ed.2d 404] (1966), “[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.”
 
 Free v. Bland,
 
 369 U.S., at 666 [82 S.Ct., at 1092].
 
 See also Gibbons v. Ogden,
 
 9 Wheat. 1, 210-211 [6 L.Ed. 23] (1824). And, specifically, a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments.
 
 McCarty v. McCarty, supra; Hisquierdo v. Hisquierdo, supra.
 
 That principle is but the necessary consequence of the Supremacy Clause of our National Constitution. However, since there is no suggestion that
 

 Congress specifically intended the bankruptcy code to include past due child support obligations in a Chapter 13 reorganization plan, there are “no clearly conflicting federal enactments” governing the disposition of this case.