**In re Edward N. CLAUGHTON, Jr., Debtor.**

**S.S. NO. 266–22–1187.**

**Bankruptcy No. ST–B–92–50132.**

United States Bankruptcy Court, W.D. North Carolina, Statesville Division.

April 27, 1992.

862

Garland S. Cassada, Allen R. Robertson, Charlotte, N.C., for plaintiff Mixson.

Joseph B.C. Kluttz, A. Lee Hogewood, III, Charlotte, N.C., for debtor Claughton.

MEMORANDUM OF DECISION DENY-ING BEVERLY MIXSON'S AMEND-ED MOTION TO DISMISS THIS CHAPTER 11 BANKRUPTCY CASE AND GRANTING MIXSON'S AMENDED MOTION FOR RELIEF FROM STAY

MARVIN R. WOOTEN, Bankruptcy Judge.

On March 13, 1992, Beverly A. Mixson ("Mixson"), through counsel, moved pursuant to 11 U.S.C. § 362(d)(1) that the automatic stay be modified to allow an equitable distribution proceeding between Edward N. Claughton, Jr. (the "Debtor") and Mixson which has been pending in the Florida state courts since 1976 to be concluded, and moved pursuant to 11 U.S.C. § 1112(b) that this bankruptcy case be dismissed for

bad faith in its filing or, in the alternative, that a Chapter 11 Trustee be appointed pursuant to 11 U.S.C. § 1104(a)(1). On April 2, 1992, the Debtor, through counsel, filed his response to these motions. On April 10, 1992, Mixson filed an amendment to her motions seeking the following further relief: dismissal of this bankruptcy case pursuant to 11 U.S.C. § 305 and, in the alternative, modification of the automatic stay to permit distribution of Mixson's share of the marital assets awarded to her in the amended final equitable distribution judgment entered by the Florida trial court on March 27, 1992. On April 13, 1992, the Debtor amended his response to the motions and moved to dismiss Mixson's motions for failure to serve the motions on the Debtor's twenty largest unsecured creditors. Also on April 13, 1992, Mixson and the Debtor filed memoranda in support of their respective positions.

On April 14 and 16, 1992, the Court conducted an evidentiary hearing on Mixson's motions. Based upon the evidence presented to the Court during the hearing and the arguments of counsel contained in their memoranda and made in open court, the Court has concluded that this case should not be dismissed and that the automatic stay should be modified, subject to the conditions stated below, and hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On February 18, 1992, the Debtor, an individual, filed a voluntary petition to reorganize under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor is acting as the debtor in possession, continues to have possession and control over all of his property, and is operating his businesses.

2. The Court finds that, as of the petition date, the Debtor is solvent. According to the Debtor's schedules, he had a net worth as of the petition date of $5,373,-069.46. The Debtor's principal assets are his majority ownership interests in two limited partnerships, one of which owns certain real property in Florida known as "Claughton Island," and another which owns certain real property in North Carolina known as "The Hound Ears Club." The Debtor's sister, Suzanne C. Schmidt, owns the minority interest in both partnerships.

3. On January 21, 1976, the Debtor and Mixson were divorced. Prior to and since that time, the Debtor and Mixson have been the parties to an equitable distribution proceeding pending in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Case No. 75–16610 FC 06 (the "Equitable Distribution Proceeding").

4. On June 1, 1990, the Circuit Court of the Eleventh Judicial Circuit of Florida (the "Florida Trial Court") entered an order in which the Court identified the marital assets of the parties subject to distribution under Florida law and determined that Mixson was entitled to a fifty percent (50%) distribution of such marital assets as of January 1976, with interest. In particular, the Florida Trial Court found that the Debtor's interest in Claughton Island was a marital asset. Because the Debtor acquired his interest in Hound Ears by conveying a parcel of Claughton Island to a third party as part of a tax-free exchange with Harry Robbins, the Debtor's interest in Hound Ears also was found to be a marital asset.

5. On March 18, 19 and 20, 1991, the Florida Trial Court conducted the final hearing on valuation of the marital assets. During these hearings, the Debtor testified that his family's remaining interest in Claughton Island was not for sale.

6. On April 2, 1991, the Florida Trial Court entered a Final Judgment on Equitable Distribution Issues (the "Equitable Distribution Judgment") in which the Court valued the marital assets identified in the June 1, 1990 order and distributed the assets between the parties pursuant to the equitable distribution laws of the State of Florida. Specifically, the Florida Trial Court valued Mixson's share of the marital assets as of 1976 at $3,216,684.50. Because the Florida Trial Court found that

Mixson's share of the marital assets as of 1976 constituted approximately one-half of the Debtor's 1991 net worth, the Florida Trial Court determined to satisfy the award of $3,216,684.50 from the remaining assets owned by the Debtor as they existed in 1991, without interest. (Based on three alternative calculations of interest discussed by the Florida Trial Court in the Equitable Distribution Judgment, interest on Mixson's share of the marital assets could range from approximately $960,-000.00 to approximately $4,600,000.00.) In the Equitable Distribution Judgment, the Florida Trial Court awarded Mixson all of the Debtor's interest in Hound Ears, which was valued at $2,368,800. To satisfy the remaining portion of the award ($3,216,-684.50 − $2,368,800.00 = $847,884.50), the Florida Trial Court awarded Mixson the Debtor's one-half interest in the escrow account containing the proceeds from the sale of their marital home ($384,432.03) and granted Mixson a $463,452.47 judgment against the Debtor to be paid by the Debtor in semi-annual principal installments of $25,000, plus interest at the rate of twelve percent (12%) per annum, until paid in full. The Florida Trial Court granted Mixson a lien on the Debtor's interest in Claughton Island to secure the Debtor's faithful performance of the Equitable Distribution Judgment, including the transfer of his interest in Hound Ears to Mixson.

7. The Debtor appealed to the Third District Court of Appeal from the June 1, 1990 order and the Equitable Distribution Judgment, but did not post a supersedeas bond to stay the effectiveness of the Equitable Distribution Judgment. In addition, on April 26, 1991, the Debtor's sister filed a "friendly" lawsuit against the Debtor in the Watauga County, North Carolina District Court, Case No. 91–CVD–237, seeking an injunction to prevent transfer of the Debtor's interest in Hound Ears to Mixson pursuant to the Equitable Distribution Judgment and on May 30, 1991, the Debtor's sister sued Judge Donner in the United States District Court for the Southern District of Florida, Case No. 91–1146, seeking injunctive relief and attorneys' fees from the judge based on the effect of the Equitable Distribution Judgment on Ms. Schmidt. On September 27, 1991, the Debtor agreed to the entry of a permanent injunction in the North Carolina suit prohibiting transfer of the Debtor's interest in Hound Ears. On December 17, 1991, the federal court suit against Judge Donner was dismissed by that court.

8. In July 1991, after entry of the Equitable Distribution Judgment, Mixson moved for relief from the Equitable Distribution Judgment based on the Debtor's alleged fraudulent concealment of material evidence, namely, the existence of negotiations and contracts for the sale of part of Claughton Island to the Storta, Gonzaga, Et Suisse Group (the "Storta Group"), from her and the Florida Trial Court ("Motion for Relief"). Based on Mixson's Motion for Relief, the Third District Court relinquished jurisdiction to the Florida Trial Court for a period of time to allow the Trial Court to consider the Motion for Relief and, if appropriate, to amend the Equitable Distribution Judgment.

9. On October 11, 1991, the Florida Trial Court found that the Debtor had fraudulently concealed material evidence about the value of Claughton Island in the Equitable Distribution Proceeding. On December 18, 19 and 20, 1991, the Florida Trial Court conducted an evidentiary hearing on Mixson's Motion for Relief and on her claim to recover her attorneys' fees from the Debtor.

10. On February 18, 1992, before the Florida Trial Court could enter its ruling on Mixson's Motion for Relief from the Equitable Distribution Judgment, the Debtor filed his bankruptcy petition, thereby staying, pursuant to Bankruptcy Code § 362(a)(1), the continuation of the Equitable Distribution Proceeding, including entry of an amended final judgment on equitable distribution issues.

11. On February 19, 1992, the Debtor filed a "Suggestion of Acquiescence in Partial Relief from Stay" evidencing his willingness to allow the Equitable Distribution Proceeding to go forward for the "limited purpose of allowing the amount of [Mixson's] equitable distribution claim to be de-

termined," while reserving to this Court the power to alter the distribution of marital assets as between the Debtor and Mixson.

12. On March 13, 1992, Mixson filed her motions to dismiss this bankruptcy case and for relief from stay. Because the Third District Court's order relinquishing jurisdiction to allow the Florida Trial Court to consider and rule on Mixson's Motion for Relief was to have expired by its own terms on March 21, 1992, Mixson requested that this Court conduct an emergency hearing to lift the stay to allow an order to be entered by the Florida Trial Court. The Court set this matter for hearing on Monday, March 16, 1992.

13. Prior to the scheduled hearing, the parties agreed to continue the hearing to a later date. On March 17, 1992, the Debtor and Mixson agreed to entry of a consent order continuing the hearing and, in the meantime, modifying the automatic stay to allow the Florida Trial Court to enter an order deciding Mixson's Motion for Relief, with such order to have no effect until disposition by this Court of Mixson's motion for relief from stay at the continued hearing.

14. On March 27, 1992, the Florida Trial Court entered an amended final judgment on equitable distribution issues pursuant to Rule 1.540 ("Amended Equitable Distribution Judgment"). Based upon the new evidence regarding the value of Claughton Island, the Florida Trial Court modified the award to Mixson by granting her $759,781 (one-half of the Debtor's additional net worth after correcting the value of his interest in Claughton Island) as interest on her half of the marital assets, for a total award of $3,976,465 (not including her half of the marital home escrow). The Florida Trial Court also modified the award by reallocating the marital assets to be distributed to Mixson to satisfy the revised award as follows:

| | | |
|---|---|---:|
| (a) | Debtor's Half of Marital Home Escrow | $ 384,432.03 |
| (b) | Debtor's 55% Interest in Claughton Island | |
| | Storta Option Parcel 1 | $2,747,521.00 |
| | (including $220,000 in escrow funds) | |
| | Parcel Not For Sale to Storta | $ 99,000.00 |
| (c) | 26.75% of Debtor's 55% interest in Storta Option Parcel 2 | $ 282,060.00 |
| (d) | Balance of Award satisfied by Money Judgment Against | |
| | Debtor | $ 463,452.47 |
| | (To be satisfied from sale of Storta Option Parcel 2, unless paid through periodic principal and interest payments) | |
| TOTAL | | $3,976,465.50 |

In addition, on March 27, 1992, the Florida Trial Court entered two other judgments against the Debtor, one taxing the Debtor with Mixson's costs in the amount of $72,-824.39 and another assessing the Debtor with one half of Mixson's attorneys' fees, which is $710,326.61.

15. Other than the Debtor's professed desire to appeal from the Amended Equitable Distribution Judgment and the two judgments for costs and fees, there are no issues remaining to be decided in the Equitable Distribution Proceeding.

16. Even if the Amended Equitable Distribution Judgment were allowed to take effect immediately, the Debtor's bankruptcy estate is solvent; that is, after distribution to Mixson of the marital assets awarded to her by the Florida Trial Court, the estate has sufficient assets to pay all claims of creditors in full pursuant to a plan of reorganization proposed under Chapter 11 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

I. Mixson's Motions to Dismiss.

Mixson urges the Court to dismiss this Chapter 11 bankruptcy case on two grounds: first, pursuant to 11 U.S.C.

§ 1112 because the petition was allegedly filed in bad faith, and second, pursuant to 11 U.S.C. § 305 because dismissal is in the best interests of the Debtor and his creditors. The Court will not dismiss this case, because the Court believes that it presents issues of first impression which do not warrant a finding of bad faith.

■ In *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir.1989), the United States Court of Appeals for the Fourth Circuit held that a bankruptcy court may dismiss a Chapter 11 bankruptcy case at the outset pursuant to 11 U.S.C. § 1112(b) for bad faith in its filing. Both objective futility and subjective bad faith must be shown in order to warrant a dismissal for want of good faith in filing. *Id.* at 700–01. The objective futility inquiry is designed to insure that there is embodied in the petition " 'some relation to the statutory objective of resuscitating a financially troubled [debtor].' " *Id.* at 701 (*quoting In re Coastal Cable TV, Inc.*, 709 F.2d 762, 765 (1st Cir.1983)). The subjective bad faith inquiry is designed to insure that the petitioner actually intends " 'to use the provisions of Chapter 11 ... to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.' " *Id.* at 702 (*quoting In re Victory Constr. Co.*, 9 B.R. 549, 564 (Bankr.C.D.Cal.1981)).

In this case the Debtor argues that while he is solvent, the Amended Equitable Distribution Judgment, if allowed to take effect, will deprive him of all of his liquid assets by distributing all but $62,000 of two escrow funds containing more than $1,000,000 to Mixson. Without liquid assets, the Debtor maintains that he needs Chapter 11 relief to insure that he is able to pay his creditors in full over time without being forced to sell his assets at distress prices. As far as this reasoning goes, the Court agrees.

The difficulty in this case arises when the Debtor admits that he may ask this Court to alter the distribution of marital assets ordered by the Florida Trial Court in the Amended Equitable Distribution Judgment in order to propose and confirm a plan of reorganization. For example, dur-

ing closing arguments on April 16, 1992, counsel for the Debtor admitted that his client may ask the Court to permit the Debtor to keep a greater share of the escrow funds by giving Mixson a greater interest in one of the Claughton Island parcels or some other asset. Mixson urges this Court to hold that because the Debtor is solvent and can satisfy in full all claims from his own property, including marital property not distributed to Mixson, any plan which alters the distribution of marital property as between the Debtor and Mixson is unconfirmable and, therefore, the Debtor's attempt to reorganize in this case is objectively futile.

■ The Court agrees with Mixson that because the Debtor is solvent, the Debtor may not propose to alter the distribution of marital property ordered by the Florida Trial Court in the Amended Equitable Distribution Judgment in order to make a proposed plan of reorganization, which will otherwise pay all creditors in full, more desirable for him. Notwithstanding the Debtor's desire to "trade" certain "illiquid" assets for cash, this Court will not alter the distribution of property to Mixson ordered by the Florida courts unless there is some prospect that the Debtor's remaining assets are insufficient to pay his remaining creditors in full. Nevertheless, because the Court believes that the Debtor's arguments in this case present issues of first impression, the Court will not hold that his proposed attempts to reorganize are objectively futile at this point and, therefore, the Court cannot find that this case has been filed in bad faith.

Based on the foregoing discussion, the Court also will not dismiss this case pursuant to 11 U.S.C. § 305. Section 305(a)(1) provides:

> The court, after notice and a hearing, may dismiss a case under this title ... at any time if the interests of creditors and the debtor would be better served by such dismissal....

11 U.S.C. § 305(a)(1). The Court is not persuaded at this time that dismissal of this case is in the best interests of the Debtor and his creditors.

## II. Mixson's Motions for Relief from Stay.

As an alternative to her motions to dismiss, Mixson has asked the Court to modify the automatic stay imposed under 11 U.S.C. § 362 in two ways: first, to permit a final judgment, including any appeal, to be entered by the Florida state courts in the Equitable Distribution Proceeding, which shall determine the distribution of marital property between the two former spouses, and second, to permit certain portions of the Amended Equitable Distribution Judgment to take effect so that Mixson will receive the marital property awarded to her including disbursement of the funds being held in escrow. The Court believes Mixson is entitled to the modification of the stay that she requests, subject to certain conditions set forth below.

(a) *Modification of the Stay to Allow the Florida Courts to Adjudicate to a Final Judgment the Claims of the Parties to Marital Property.*

██ When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed. 11 U.S.C. § 362(a)(1). Section 362(a)(1) provides that the filing of a bankruptcy petition "operates as a stay of ... the commencement or continuation ... of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case...." Accordingly, when the Debtor filed his voluntary bankruptcy petition on February 18, 1992, the Equitable Distribution Proceeding was halted by the automatic stay.

The automatic stay is an important component to the bankruptcy process designed "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured." *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir.1982). Neither the language of the provision, however, nor the policy underlying that provision, relegate the creditors of the bankruptcy debtor to an immutable world of limbo. As Congress recognized when enacting the automatic stay:

It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5836. Recognizing that some actions are better suited to resolution outside of the bankruptcy forum, Congress specifically granted (in the same provision establishing the automatic stay) full discretion to the bankruptcy court to lift the stay to allow litigation to go forward in another forum. Section 362(d) provides:

On request of a party in interest and after notice and a hearing, the court *shall grant relief from stay* provided under [§ 362(a) ], such as by terminating, annulling, modifying, or conditioning such stay—(1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d)(1) (emphasis added).

██ To determine whether sufficient "cause" exists to allow litigation to go forward in a non-bankruptcy forum, the bankruptcy court conducts a test balancing any potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the stay if relief is denied. *In re Peterson*, 116 B.R. 247 (Bankr.D.C.Colo. 1990). Specifically, this test calls on the court to evaluate the following factors, any one of which can form the proper foundation for lifting the stay:

(i) Whether modification of the stay to allow litigation to conclude in a different forum will promote *judicial economy;*

(ii) Whether the issues in the pending litigation involve only *state law* so that the expertise of the bankruptcy court is unnecessary;

(iii) Whether relief from stay would *interfere with the bankruptcy case;* and

(iv) *Whether the estate can be protected properly* by a requirement that creditors

seek enforcement of any judgment through the bankruptcy court.

*See In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985) (judicial economy and state law issues); *In re Revco D.S., Inc.*, 99 B.R. 768, 776–777 (Bankr.N.D.Ohio 1989) (judicial economy, state law issues, no interference with administration of estate, and estate protected by requiring enforcement of judgment in bankruptcy case); *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 827 (N.D.Ill.1986) (judicial economy and estate protected by requiring enforcement of judgment in the bankruptcy case); *In re UNR Industries, Inc.*, 54 B.R. 266, 269 (Bankr.N.D.Ill.1985) (judicial economy and State law issues); *In re Rabin*, 53 B.R. 529, 530–32 (Bankr.D.N.J.1985) (judicial economy and estate protected by requiring enforcement of judgment in the bankruptcy case); *Broadhurst v. Steamtronics Corp.*, 48 B.R. 801, 802–3 (D.Conn.1985) (judicial economy, state law issues and estate protected by requiring enforcement of judgment in bankruptcy case).

■ When pending litigation involves solely issues of state law, the bankruptcy court should favor relief from stay to allow the litigation to go forward in state court. *Broadhurst v. Steamtronics Corp.*, 48 B.R. at 802. This is particularly true when the state law issues involve domestic relations. *In re MacDonald*, 755 F.2d at 717 (quoting *In re Graham*, 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)) ("[I]t is appropriate for the bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."). Recognizing that equitable distribution proceedings and other property settlement cases involve complicated features of state law, bankruptcy courts consistently lift the stay to allow litigation to go forward in state courts that normally determine such matters. *See, e.g., In re Bible*, 110 B.R. 1002, 1010 (Bankr.S.D.Ga.1990) ("the application and interpretation of [equitable distribution law] is best left to the expertise of the state courts"); *In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y.

1987) ("the adjudication of all rights, duties and entitlements as between the debtor and the spouse are within the exclusive province of the state matrimonial court"); *In re Heslar*, 16 B.R. 329, 333 (Bankr.W.D.Mich. 1981) ("a property settlement involves an inquiry into factors regularly considered by state courts in divorce proceedings, an inquiry which ... is best left to the state courts").

Consistent with this authority, this Court has construed *Caswell v. Lang*, 757 F.2d 608 (4th Cir.1984), to instruct bankruptcy courts to give great deference to state courts in domestic matters. In *Caswell*, the Fourth Circuit considered whether the bankruptcy court had the power to modify a state court child support order by confirmation of a Chapter 13 plan of reorganization providing for payment of delinquent child support obligations in a manner different from the provisions of a state court order. *Caswell*, 757 F.2d at 609. The Fourth Circuit ruled that the bankruptcy court did not have such authority because "a federal court may not interfere with the remedies provided by a state court in these areas of particular state concern...." *Id.* at 610.

Considering the balancing test in light of *Caswell*, this Court has routinely weighed the balance in favor of granting relief from stay to allow the state court to conclude the adjudication of equitable distribution proceedings. The law applicable to equitable distribution is unusually detailed and complex. The state court, which usually adjudicates such matters, possesses greater expertise in the identification and distribution of marital property and the resolution of other domestic matters covered by state law. For this reason, this Court has adopted the general rule that, unless it can be done most expeditiously and least expensively in the bankruptcy forum, this Court will grant relief from stay or abstain on equitable distribution matters.

Applying this Court's general rule and the balancing test in this case, the Court concludes that Mixson is entitled to relief from stay to allow the Equitable Distribu-

tion Proceeding to continue to a conclusion. The Court will modify the stay to allow the Florida courts to make a final determination of the claims of the parties and a final distribution of the marital property as between the Debtor and his former spouse, although this Court will retain authority given it by the Bankruptcy Code and by 28 U.S.C. § 157 to determine the allowance or disallowance of claims against the estate. This Court will not modify the distribution by the state court as between the two spouses. Because final determination of the Equitable Distribution Proceeding is essential to the expeditious administration of this case, this Court hereby requests that the Florida state courts complete the Equitable Distribution Proceeding as soon as they are reasonably able to do so.

The normal procedure followed by this Court when modifying the § 362 stay to allow an equitable distribution proceeding to conclude in state court is to permit the state court to proceed with the expeditious determination of the non-debtor spouse's claims and the property distribution of the marital property as between the two spouses and, immediately upon such determination becoming final and prior to actual distribution, this Court proceeding to determine the creditor rights, if any, to the marital property distributed to the spouse and the confirmability of any plan of reorganization proposed by the debtor. As set forth below, however, the Court has concluded that, because the Debtor has sufficient value in his property remaining after distribution of marital property to Mixson to pay all creditors in full, this Court cannot allow the Debtor, by way of a plan of reorganization or otherwise, to invade marital property awarded to Mixson for the satisfaction of his debts.

(b) *Modification of the Stay to Allow the Immediate Distribution to Mixson of Marital Property Awarded to Her by the Florida Courts.*

Mixson moves the Court to depart from its normal procedure and allow her to receive immediate distribution of the marital property awarded to her pursuant to the Amended Equitable Distribution Judgment, which is the result of extensive litigation in the Florida courts. In support of this relief, Mixson argues that the value of property remaining with the Debtor following distribution of marital property to Mixson pursuant to the Amended Equitable Distribution Judgment will be more than sufficient to pay in full the claims of all creditors. By reason of the Amended Equitable Distribution Judgment, Mixson argues, the Debtor has no equity in property awarded to Mixson and, because the Debtor can satisfy the claims of his creditors from his remaining property, the marital property distributed to Mixson is not necessary for an effective reorganization.

The Debtor, on the other hand, argues that, because the Florida Trial Court distributed most of the marital cash to his former spouse, the Amended Equitable Distribution Judgment may jeopardize his ability to reorganize and pay his creditors.

According to the Debtor, claims against his bankruptcy estate, including judgments held by Mixson and her professionals, total almost $1,500,000.00.[1] The property of the estate remaining after distribution of marital assets to Mixson includes the Debtor's majority interest in Hound Ears Club Ltd. as well as an interest in Storta Option Parcel 2 of Claughton Island. Based on evidence presented to the Florida Trial Court in March 1991, the Florida Trial Court concluded that Mr. Claughton's interest in Hound Ears alone has a value of $2,368,800.00. In addition, as of the date of the hearing in the bankruptcy case, the Debtor was negotiating with the Storta Group regarding its option to purchase two parcels of Claughton Island, including an option to purchase Option 2 Parcel for an amount that would net the Debtor a cash payment sufficient to pay all creditor

---

1. These claims include a contingent liability to First Union National Bank limited, by a guaranty agreement, to $250,000.00 and a tax liability that has not yet been finally determined, but that the Debtor estimates to be about $191,-

000.00. The Debtor and his accountant conceded at the hearing that the tax claim may be less than $191,000.00 and that the First Union claim on the guaranty may never mature.

claims in full. Based on all of the evidence presented, the Court is convinced that, even after distribution of her marital property to Mixson, the Debtor will have assets of sufficient value to pay in full all of his creditors.

Based on this finding, the Court concludes that the marital property awarded to Mixson is not necessary to the Debtor's reorganization and that it would be inappropriate for this Court to reallocate the marital property distribution determined by the Florida courts for the convenience of the Debtor and his creditors. Based on these same findings, the Court further concludes that cause exists to modify the stay to allow Mixson to receive immediate distribution of marital property awarded to her.

The Debtor also argues that the Court should not lift the stay to allow Mixson to receive marital property awarded to her because he may prevail on his appeal in the Florida courts. In the event of such a result, the Debtor argues, he will have been irreparably harmed because he may be unable to retrieve the marital property distributed to Mixson.

By this argument, the Debtor is effectively asking the Court to provide him with a stay pending appeal. The Court concludes that, given the circumstances of this case, including the Debtor's ability to satisfy in full all claims from his property, it would be inappropriate to continue the automatic stay to avoid distribution of marital property to Mixson for the sole purpose of providing the Debtor with a stay of the Amended Equitable Distribution Judgment pending appeal.

■ The Court believes that the effectiveness of that portion of the judgment to be entered modifying the stay to allow Mixson to receive immediate distribution of marital property awarded to her should not become effective until the Debtor has had an opportunity to appeal from that judgment, if the Debtor should choose to do so. The Court believes that the Debtor should have an opportunity to appeal this Court's conclusion that the Bankruptcy Code does not allow the Court to modify the distribution of marital property pursuant to a state court order when the Debtor has assets, exclusive of marital assets awarded to the spouse, with value sufficient to pay all creditors in full. If the effectiveness of this order is not stayed during the course of any appeal that the Debtor may decide to take, the Debtor's appeal would be rendered moot. For this reason, the Court has determined to exercise its discretion to stay that portion of this order allowing immediate distribution of marital property to Mixson pending any such appeal. The stay pending appeal shall not apply, however, to that portion of the judgment to be entered allowing the litigation, including any appeals, to go forward to a conclusion and allowing Mixson to receive one-half of the proceeds (including interest) escrowed from the sale of the marital residence and distribution to the Debtor of proceeds awarded to him from the escrow of proceeds from the sale of the Claughton Island parcel in 1991, an amount equal to about $62,000.00.

■ At the conclusion of the hearing, Mixson withdrew her motion for the appointment of a trustee in favor of an order requiring the Debtor and his agents to keep Mixson advised regarding efforts, negotiations, expressions of interest and the like with respect to the sale of Claughton Island. The Court concludes that Mixson is entitled to receive certain information about the prospects for the sale of the Claughton Island parcels during the pendency of this bankruptcy case as "adequate protection" of her interest in those parcels awarded to her by the Equitable Distribution Judgment and the Amended Equitable Distribution Judgment. Specifically, the Debtor will be ordered to provide Mixson and her counsel with a full, complete and accurate description in writing on a daily basis of all negotiations, inquiries, offers for the sale of any parcel of Claughton Island in which the Debtor has an interest.

The Court will enter an appropriate judgment separately as required under Federal Rule of Bankruptcy Procedure 9021.