**In re Charles V. HENRY, Debtor.**

**Gary J. GAERTNER, Trustee, and Charles V. Henry, Plaintiffs,**

**v.**

**Marilyn Jean CHOSKE, Defendant.**

Bankruptcy No. 91–4193–JLC.
Motion No. KLK–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 9, 1992.

K. Lawrence Kemp, New Kensington, Pa., for debtor, Charles V. Henry.

Michele G. Bononi, Greensburg, Pa., for respondent, Marilyn Jean Choske.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The matter before this court is a motion by Charles V. Henry ("Debtor") to enforce the automatic stay against a wage attachment order issued by the Domestic Relations Section of the Court of Common Pleas

of Westmoreland County, Pennsylvania ("DRS") for unpaid child support arrearages. The Debtor also seeks the return of post-petition garnished wages to the estate.

## I. FACTS

The Debtor and Marilyn Jean Choske ("Defendant") are the parents of either one or two daughters [1]. The daughter(s) have reached their majority and have completed their higher education prior to the commencement of the Debtor's Chapter 13 bankruptcy case. At the time of the bankruptcy filing, the Debtor was not under a current obligation to pay current child support, however, he owed an arrearage for unpaid child support. On May 25, 1991, the DRS entered a support order against the Debtor in the amount of $7,223 for unpaid child support which accrued between 1981 and the childrens' 18th birthdays. On July 17, 1991, a separate wage attachment order was entered requiring the Debtor to pay $23.00 bi-weekly towards the arrears.

On November 13, 1991, the Debtor filed for protection under Chapter 13. The Defendant was listed as an unsecured creditor in the Debtor's schedules. The plan was confirmed on January 17, 1992. The plan provided for administrative expenses and monthly payments to the Chapter 13 Trustee in the amount of $682 for two months and $603 for 58 months.[2] The only creditor listed to be paid under the plan is the Internal Revenue Service.[3] The plan does not provide for payments to the Defendant, however, it does state that the balance, if any, will be distributed to allowed unsecured creditors. The Defendant has not filed a proof of claim.

A dispute exists as to whether the Defendant had notice of the bankruptcy proceedings. The court believes that the Defendant knew or should have known of the Debtor's pending bankruptcy. The Debtor served the Defendant with a notice of the commencement of the case, the plan, and notice of the plan confirmation hearing. The Debtor also produced a certified letter dated January 6, 1992, to the DRS requesting that the wage attachment be suspended due to the pending bankruptcy.[4] Moreover, on March 23, 1992, Debtor's counsel appeared at the DRS office for a hearing regarding an increase of the Debtor's child support wage attachment. At this hearing, Debtor's counsel again informed the DRS of the Debtor's pending bankruptcy and demanded that the wage attachment discontinue because it was a violation of the automatic stay. The DRS hearing officer disregarded Debtor's counsel's request and granted the wage attachment increase.[5]

This proceeding was commenced on March 13, 1992 when the Debtor filed a motion to enforce the automatic stay and to recover any monies the Defendant received through the wage attachment after the commencement of this case. In this proceeding, the Debtor is joined by the Chapter 13 Trustee, Gary J. Gaertner, as a Plaintiff.

## II. ANALYSIS

The issue before this court is whether a state court wage attachment order to collect unpaid child support arrearages in a Chapter 13 violates the automatic stay. As a preliminary matter, the court must decide whether the wage garnishment order entered by a state court is within its jurisdiction.

1. The briefs conflict on this fact. The Debtor's brief states that he and the Defendant have one daughter, while the Defendant's brief indicates that they have two daughters.

2. The Debtor nets a salary of $1,139.86 a month from his current position as a car salesman.

3. The Debtor owes the Internal Revenue Service $32,528 in back taxes, interest and fines. It was this debt which prompted the Debtor to seek Chapter 13 bankruptcy protection.

4. The Defendant resides in Colorado and brought this action through a Uniform Reciprocal Enforcement Support Action, and since 1981 has been represented in this matter by the DRS.

5. The actual amount of the wage attachment is unknown to the court because this fact conflicts in the Debtor's and the Defendant's briefs. The Debtor claims that the wage attachment was increased to $150 a month, while the Defendant's brief asserts that the it was increased to $57.70 by-weekly.

■ The Defendant argues that the Debtor cannot "divest" DRS of its jurisdiction over this matter by "seeking refuge with the filing of a bankruptcy petition." (Defendant's Brief, p. 4). In addition, the Defendant asserts that bankruptcy courts have historically favored giving state courts "exclusive jurisdiction" over domestic relation matters. *Id.* (cites omitted)

Some courts have held that a state court's determination respecting the rights of the parties in domestic relation matters should not be disturbed by the federal bankruptcy courts. *Caswell v. Lang,* 757 F.2d 608 (C.A.4 Va.1985). In *Caswell,* the Fourth Circuit held that "a federal court may not interfere with the remedies provided by a state court in these areas of particular state concern ..." *Id.* at 610. ·The court went on to hold that "[t]o permit child support arrearages to be included in a Chapter 13 plan would invite a federal bankruptcy court to alter or modify a state court decision regarding the payment and discharge of the overdue debt." *Id.; see e.g., In re El–Amin,* 126 B.R. 855 (B.C.E.D.Va.1991) (State court is a better forum to determine the extent of Debtor's support obligations.); *In re Miller,* 36 B.R. 403 (B.C.N.D.Ohio 1984) (Bankruptcy court lacks jurisdiction to modify or vacate a divorce decree or separation agreement.) *Caswell v. Lang* has since been widely criticized as narrowly construing the power of the bankruptcy courts in dealing with claims against the Debtor. *See,* 5 *Collier on Bankruptcy,* Section 1322.14(1) (15th edition).

Bankruptcy courts, through reference to 28 U.S.C. § 157(a), are provided with exclusive jurisdiction under all actions arising under Title 11 of the United States Code. *See,* 28 U.S.C. § 1334(a). In this case, the Debtor has exercised his federal rights to reorganize in a Chapter 13 bankruptcy. Therefore, this court has the exclusive jurisdiction to determine the extent and effect of any claims in this case.

■ The next question is whether the automatic stay prohibits the state imposed garnishment order from continuing post-petition. The Defendant argues that "[t]he bankruptcy code may not be used to deprive dependents, even temporarily, of the necessities of life." *E.g., Caswell v. Lang,* 757 F.2d 608, 610. The Defendant believes that since the debt involved and the garnishment being maintained is for past due child support, the automatic stay provisions of 11 U.S.C. § 362 do not apply because such an obligation is exempt from the stay under 11 U.S.C. § 362(b)(2). See, *In re Bernstein,* 20 B.R. 595 (B.C.M.D.Fla.1982); *In re Nelson,* 85 B.R. 731 (B.C.E.D.Va. 1988); *cf., In re Garrison,* 5 B.R. 256 (B.C.E.D.Mich.1980); *Caswell v. Lang, supra.; In re Gomez Molina,* 77 B.R. 368 (B.C.D.C.Puerto Rico 1987).

The Debtor maintains that actions to collect child support are subject to the automatic stay and are not exempt under 11 U.S.C. § 362(b)(2). This court recognizes that the claim of an ex-spouse for delinquent child support payments is often of great importance to them. Congress has sought to provide such parties relief through the exception to the automatic stay for alimony, maintenance, and support. This exception permits the collection of alimony, maintenance and support from property which is not property of the bankruptcy estate. However, future income in a Chapter 13 is property of the estate. To allow an unsecured creditor such as the Defendant to proceed against property that is part of the estate would be extremely damaging to the chances of a successful Chapter 13 reorganization.

In addition, in this narrow factual situation, there is good grounds to argue that a wage attachment for support arrearages specifically does not fit under the "alimony, maintenance and support" exception of Section 362(b)(2). It is clear Congress intended to protect spouses and children from the hardships that would result in a severance of *currently-due* alimony and child support payments through the exception under 362(b). Congress also provided that child support and alimony obligations are not dischargeable whether the Debtor is in Chapter 7, 11, or 13. 11 U.S.C. § 523(a)(5), *see, Matter of Garrison,* 5 B.R. 256 (B.C.E.D.Mich.1980).

The case at bar involves unpaid child support arrearages, not currently due support payments. The intended beneficiaries of the past-due payment are no longer in dire need of them, having reached the age of majority and completed their higher education. Now, this debt is not different from other unsecured creditors except it is nondischargeable. This court holds that the collection order entered after the filing of the Chapter 13 petition violated the automatic stay under 11 U.S.C. § 362. The Defendant may seek the same relief in state court when the Debtor's Chapter 13 plan is completed or upon conversion of this case to a Chapter 7. The Defendant also has the right to request relief from the automatic stay to attempt to collect as an unsecured creditor. Admittedly, this action would not be easily granted.

■ The Defendant also asserts that the Debtor's future earnings, not used to fund the plan, "revest" in the Debtor after the Chapter 13 plan has been confirmed. She alleges that the unused earnings are not a part of the estate and that the Defendant is permitted under section 362(b) to collect child support from property which is not included in the bankruptcy estate. The Defendant further contends that under 11 U.S.C. §§ 1327(b) and 362(b)(2), once the Debtor has his plan confirmed, post-petition wages which are not used in the plan revest in the Debtor, removing them from the bankruptcy estate and subjecting them to enforcement by the child support creditor. *In re Adams*, 12 B.R. 540 (B.C.D.Utah 1981). *But see, In re Brilz*, 96 B.R. 308 (B.C.D.C.Mont.1989).

This argument neglects the effect of 11 U.S.C. § 1306. The filing of a bankruptcy petition creates a bankruptcy estate. This estate is comprised of all legal or equitable interests of the Debtor in property. When confirmation of a plan is obtained, property not used in the estate "revests" in the Debtor. But, unlike a Chapter 7 estate which is essentially limited to property identified in Section 541, the Chapter 13 estate is much more inclusive. It includes not only the property that would otherwise constitute a Chapter 7 estate, but also:

(a) Property of the estate includes, in addition to the property specified in Section 541 of this title—

(1) all property of the kind specified in such section that the *Debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted* into a case under chapter 7, 11, 12 of this title, whichever occurs first; and (*emphasis added*)

11 U.S.C. Section 1306(a)(1). "Section 1306 broadens the definition of property of the estate for Chapter 13 purposes to include all property acquired and all earnings from services performed by the Debtor after commencement of the case." Committee Notes on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News, p. 5787.

Therefore, the Debtor's future earnings during the Chapter 13 reorganization, until either the plan is completed or the case is converted, are property of the bankruptcy estate and are not subject to attachment. Creditors are instructed to file claims. The future earnings of the Debtor fund this reorganization. Without the automatic stay to protect those earnings, reorganization would not be possible. In a Chapter 13, Congress intended a debtor's future earnings to be included in the estate. *In re Aneiro*, 72 B.R. 424 (B.C.S.D.Cal.1987)

■ Finally, the Debtor demands monies received by wage attachment since the date of the petition's filing be returned. In *In re Adams*, 12 B.R. 540 (B.C.D.C.Utah 1981), the court held that although the state modification order was in violation of the stay, because of the father's (Debtor) previous deplorable child support payment record, further sanctions would not be entered. In contrast, the court in *In re Denn*, 37 B.R. 33 (B.C.D.C.Minn.1983), held that because future wages are part of the bankruptcy estate, the Defendant was served with a copy of the plan, the Defendant received notice of the bankruptcy, and instead of pursuing a remedy in the bankruptcy court as required by the Code, the Defendant acted in violation thereof. Therefore she was ordered to repay all

post-petition garnishment from the Debtors wages.

This court chooses to follow *In re Denn.* The Defendant had notice of this bankruptcy and plenty of opportunity to cease the wage attachment. Instead, the Defendant ignored the bankruptcy proceedings and continued to collect payment. This was a clear violation of the automatic stay. Therefore, the Defendant is required to return all monies received since the filing of the bankruptcy petition to the Debtor's estate.

## III. CONCLUSION

The Debtor's motion to enforce the automatic stay is granted. The state court garnishment order must discontinue. The Defendant's unsecured debt is nondischargeable and can be pursued after the Chapter 13 plan is completed or if the case is converted, or upon relief from the automatic stay. Furthermore, the Defendant is required to return monies received since the filing of the bankruptcy petition to the Debtor's estate.