**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Leonard E. PIERCE and Gayle S.**
**Pierce, Defendant–Appellees.**

**No. 5:98–CV–458–BR.**

United States District Court,
E.D. North Carolina,
Western Division.

Oct. 19, 1998.

Rudolph A. Renfer, Jr., Paul M. Newby, Assistant U.S. Attorneys, Raleigh, NC, for United States.

Michael Ryan Dyson, Layton, Dyson & Carraway, P.A., Raleigh, NC, for Debtor/Defendant.

*ORDER*

BRITT, Senior District Judge.

This matter is before the court on appeal from an order of United States Bankruptcy Judge A. Thomas Small. The appeal has been fully briefed and is thus ripe for decision.

## I. BACKGROUND

Leonard E. Pierce and Gayle S. Pierce (appellees or debtors) filed a joint Chapter 7 petition on 24 August 1984. Plaintiff-appellant filed an adversary proceeding to object to the debtors' discharge and to request a determination that their obligation to the Farmer's Home Administration (FHA) was nondischargable. The Bankruptcy Court allowed the debtors' discharge of some obligations; however held that their obligation to the FHA was nondischargable. On 25 April 1985, a judgment was entered in favor of the United States in the amount of $40,757.85 plus interest at the annual rate of 9.15%. *In re Pierce,* No. M–84–01271–MN2 (Bankr. E.D.N.C. April 15, 1985).

On 6 August 1996, over ten years after the majority of the debtors' debts had been discharged Mr. Pierce died. At that time, Mrs. Pierce became the beneficiary of approximately $52,000.00 in life insurance proceeds On 25 July 1997, the United States moved the Bankruptcy Court to enjoin Mrs. Pierce from disposing of the $15,000.00 remaining of the proceeds. The Bankruptcy Court issued a restraining order that day and Mrs. Pierce placed the $15,000.00 on deposit in her attorney's trust account. On 1 August 1997, the clerk of the Bankruptcy Court issued a notice of post judgment execution.

On 11 August 1997, the Bankruptcy Court held a hearing to determine the need to continue the restraining order. On 5 September 1997, the Bankruptcy Court entered a preliminary injunction requiring Mrs. Pierce's attorney to retain the funds on deposit; however, the bankruptcy Court did release $3,500.00 to Mrs. Pierce based upon the understanding that the funds were needed for automobile repairs and that she would be entitled to that amount as a "wildcard exemption."

On 7 November 1997, the Bankruptcy Court issued an order terminating the preliminary injunction and denying the request of the government for a permanent injunction. It is from this order that the government appealed to this court.

## II. STANDARD

This court has jurisdiction over this matter, as it is an appeal from a final order of the bankruptcy court. 28 U.S.C. § 158. Because the issue presented in this case is a question of law, this court will conduct a *de novo* review. See, *Caswell v. Lang,* 757 F.2d 608 (4th Cir.1985); *In re New England Fish Co.,* 749 F.2d 1277 (9th Cir.1984).

## III. DISCUSSION

■ There is only one issue presented for appeal: whether the Bankruptcy Court erred in holding that the United States was bound by a state statute prohibiting a creditor from enforcing a judgment against personal property more than ten years after the date it is rendered when attempting to collect a debt pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. § 3001 *et seq.* (FDCPA or the Act).

The United States is proceeding pursuant to the FDCPA, which applies retroactively to judgments entered within 10 years prior to the statute's effective date of 28 May 1991 28 U.S.C. § 3005. Because the judgment in this case was entered on 25 April 1985, the FDCPA applies to this judgment. By its own terms, the FDCPA provides the "exclusive civil procedure" for the United States to recover a judgment, except to the extent another federal law applies. 28 U.S.C. § 3001(a)(1).

The Bankruptcy Court relied on the language of § 3003(f) which provides that "the Federal Rules of Civil Procedure shall apply with respect to the actions and proceedings under [the FDCPA]" except to the extent inconsistent therewith to conclude that Fed. R.Civ.P. 69 controls this action. Rule 69(a) provides that the "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution [which] shall be in accordance with the practice and procedure of the

state in which the district court is held, ... except that any statute of the United States governs to the extent that it is applicable." Fed.R.Civ.P. 69(a). Despite the fact that the United States was proceeding pursuant to the FDCPA, the Bankruptcy Court applied N.C.Gen.Stat. § 1–306 which allows a judgment creditor to enforce a judgment by execution, but which states that "no execution upon any judgment which requires the payment of money or the recovery of personal property may be issued at any time after ten years from the date of the rendition thereof." Noting that the United States was "unable to point to any section of the FDCPA or any other Federal statute that would preclude the application of Rule 69 of the Federal Rules of Civil Procedure or North Carolina General Statute § 1–306," the Bankruptcy Court concluded that the 12 year-old judgment against the debtor could not be collected. *United States v. Pierce,* 214 B.R. 550, 552 (Bankr.E.D.N.C.1997).

The United States argues that the analysis employed by the Bankruptcy Court would have been accurate prior to the passage of the FDCPA but that the FDCPA preempts the application of Rule 69 to the government's collection of debts. The language of the FDCPA, together with its legislative history, supports the arguments of the government.

Under the federal common law and before the enactment of the FDCPA, a judgment in favor of the federal government lasted indefinitely. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Even though the judgments were valid for an indefinite period, the government had to enforce them pursuant to state laws which required that a judgment be revived if it had become dormant under the applicable state statute. Fed.R.Civ.P. 69(a); 28 U.S.C. § 1962 (liens arising from judgments in federal courts had the same effect and were enforced as state court judgments). Thus, the United States had to revive a judgment under the state law of the state in which the district court which imposed the judgment sat before that judgment could be enforced. There was not a limit on the number of times a judgment could be revived for enforcement

purposes. *United States v. Hannon,* 728 F.2d 142 (2nd Cir.1984).

The FDCPA was enacted to provide a more consistent means of debt collection for the United States The Department of Justice drafted the initial text of what became the FDCPA "to bring an end to the present situation whereby a crazy patchwork of laws in the fifty states dictate debt collection remedies available to [the government] in collecting Federal debts." H.R.Rep. 101–825, p. 12. The FDCPA was proposed to "provide consistent and fair creditors' rights to the Government regardless of the state of residence of the debtor and eliminate the preference certain state laws presently confer on Federal debtors who just happen to live in states which are regarded as notorious 'debtor's havens.' " *Id.*

> The purpose of [the FDCPA] is to create a comprehensive statutory framework for the collection of debts owed to the United States government. Creation of a uniform federal framework for the collection of Federal debts in the Federal Courts will improve the efficiency and speed in collection those debts. . . .

H.R.Rep. 101–736, p. 32. The legislative history also emphasizes the importance of a uniform collection procedure for the government by noting:

> in making the transition to a uniform Federal statutory scheme from the current patchwork of State laws governing collection procedures, the Committee made the policy decision that in addition to new claims arising after enactment, the Act should also apply to all pending claims and to all judgment of claims reaching back ten years. In other words, the Committee includes within the scope of the Act all debts owing to the government that span the "anything goes" decade of the 1980's when many threw prudence and sound business judgment to the winds in their quest for instant wealth.

*Id.* at 33. See also *Selbe v. United States,* 912 F.Supp. 202, 205 (W.D.Va.1995) (FDCPA arose to provide single process by which federal government could collect debts owing to it thereby circumventing the 50 debt col-

lection procedures of the states it had formerly been compelled to follow).

 The language of the FDCPA directly supports the intent of the statute as explained above Section 3001(a)(1) states that the act "provides the exclusive civil procedures for the United States—(1) to recover a judgment or debt." Section 3005 explicitly states that the Act is to apply to all debts arising after 29 May 1981. 28 U.S.C. § 3005 Section 3003(d) makes it clear that the FDCPA "shall preempt state law to the extent such law is inconsistent" with the FDCPA. The legislative history explains this statement to mean that a state law cannot affect the federal government's rights to collect a debt under the Act. H.R.Rep. 101–736, pp. 37–38. Specifically, the House Report gives the example that a state law limiting the garnishment of wages would be preempted by the FDCPA's provision dealing with garnishment. *Id.* at 38. Likewise, a state law providing the means for execution of a judgment, such as N.C.Gen.Stat. § 1–306, is preempted by the FDCPA provisions regarding execution. See 28 U.S.C. § 3203. To hold any other way would be to allow a federal government debtor the benefit of select procedural requirements within a state remedy and engraft the same into the Act. This would completely thwart the FDCPA's stated purpose of the creation of uniform federal procedures for the collection of debts to the federal government.

Title 28 U.S.C. § 3203(a) is the specific section of the Act describing the execution remedy available to the United States for debt collection This section states: "All property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution." This section does not limit the period of time within which the government must execute on the property; however, the entire statute, by provision of § 3005, is applicable only to debts arising on or after 29 May 1981.

 Appellee asserts that while the Act itself contains a time limitation, it does not specifically establish a time limitation on the remedy of execution against personal property and thus, the state limitation should apply. (Appellee's Br. at 2–3.) Such an application

would be contrary to the stated purpose of the FDCPA. Further, this silence cannot be construed as unintentional, but rather as the intention for execution procedures to track the indefinite life of a judgment in favor of the United States. We must and should assume that Congress was aware that a federal judgment is unrestricted in duration.

## III. CONCLUSION

For the reasons stated above, the ruling of the Bankruptcy Court is hereby REVERSED, and this matter is REMANDED to the Bankruptcy Court for an order consistent with this opinion.